37734. SLIGER v. THE STATE.<br>37739. WRIGHT v. THE STATE.

GREGORY, Justice.

Sliger and Wright were indicted for robbery and murder. When the State announced its intention to seek the death penalty, the trial court initiated pre-trial proceedings in accordance with the Unified Appeal Procedure. See 246 Georgia Reports, Appendix; Code Ann. §

27-2538 (Ga. Laws, 1980, pp. 390-391); Ga. Laws, 1981, p. 1532. Defendants moved to dismiss or stay the proceedings on the ground that the Unified Appeal Procedure violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment. The trial court denied the motion, but certified the cases for immediate review. We granted defendants' application for interlocutory appeal.

This appeal presents a facial attack on the Procedure without specific events having occurred below to be addressed. Consequently, the issues before us are not clearly focused. Nonetheless, we have undertaken the task of addressing each of defendants' enumerations of error as this challenge to the Unified Appeal Procedure presents a case of first impression.

(1) Defendants take the position that the Unified Appeal Procedure violates the Due Process Clause of the Fourteenth Amendment in that it provides "an all encompassing discovery tool for the State" without providing a defendant with means of reciprocal discovery in violation of Wardius v. Oregon, 412 U. S. 470 (93 SC 2208, 37 LE2d 82) (1973).

In that case the U. S. Supreme Court struck down an Oregon statute which prohibited a criminal defendant from introducing any evidence in support of his alibi defense if he failed to give the State pre-trial notice of his intention to rely on an alibi defense, but which made no provision for reciprocal discovery rights. The Court held that "the Due Process Clause of the Fourteenth Amendment forbids enforcement of alibi rules unless reciprocal discovery rights are given to criminal defendants." Id. at 472. Noting that while "the Due Process Clause has little to say regarding the amount of discovery which the parties may be afforded," the Court concluded that "it does speak to the balance of forces between the accused and the accuser." Id. at 474.

Defendants in this case do not cite any discovery rights given to the prosecution under the Unified Appeal Procedure which were not available prior to the establishment of the Procedure. Rather, defendants argue only that "[t]he defendants across the state have not been treated so nicely as to have the Supreme Court of Georgia order that discovery be made prior to trial and with such certainty." Pretermitting the determination of whether, by this argument alone, defendants have invoked a challenge of constitutional magnitude, we note that the Unified Appeal Procedure specifically outlines numerous federal and state discovery rights of which a defendant may avail himself: (a) Code Ann. § 27-1403 (right to receive a copy of the indictment and a list of the State's witnesses) Section I, "Checklist"; (b) discovery rights under Brady v. Maryland, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963) and United States v. Agurs, 427

U. S. 97 (96 SC 2392, 49 LE2d 342) (1976); (c) Code Ann. § 27-1302 (right to receive out-of-court incriminating statements made by defendant); (d) Code Ann. § 27-1303 (right to discovery of scientific reports); (e) Code Ann. § 38-801 and § 38-802 (right to subpoena documentary evidence); and (f) right of defendant charged with possession or sale of a prohibited substance under *Patterson v. State,* 238 Ga. 204 (232 SE2d 233) (1977) to have an independent expert examine the substance.[1] See Section L, "Checklist," Unified Appeal Procedure, supra. We further note that at the first pre-trial proceeding under the Unified Appeal Procedure, "[t]he prosecuting attorney shall state whether or not he intends to seek the death penalty." See 246 Ga. at A-7. Thus, defendants' argument that the Unified Appeal Procedure violates Due Process in that it fails to provide a defendant with reciprocal rights of discovery is without merit.

(2) Defendants next argue that the Unified Appeal Procedure violates the Equal Protection Clause of the Fourteenth Amendment. Defendants contend that the Procedure "burdens" criminal defendants against whom the State seeks the death penalty while not placing the same "burden" on criminal defendants in cases where the State does not seek the death penalty. Defendants do not cite any particular "burden" which the Unified Appeal Procedure imposes on death penalty defendants; instead they lodge a complaint against the "scrutinization by the trial court . . . in a death penalty case" and argue that "the purpose of the Unified Appeal [Procedure] is to . . . prepackage the case before conviction."

We find that the Unified Appeal Procedure *benefits* the criminal defendant against whom the death penalty is sought by insuring that all state and federal rights available to him are made known to him. See "Statement of Purposes," 246 Ga. A-5. There is no sanction more serious which can be imposed on a criminal defendant than the taking, by the State, of his life. The Unified Appeal Procedure is designed to protect the criminal defendant in this potentially precarious situation during each phase of the judicial process which may ultimately result in a conviction and sentence of death. Defendants have made no showing that the Unified Appeal Procedure unconstitutionally contravenes this goal. Nor have they shown how the Unified Appeal Procedure "prepackages the case

---

[1] We have recently expanded the discovery right set out in *Patterson,* supra, to include a right, upon motion timely made, to independently examine "critical evidence" in the case, the nature of which "is subject to varying expert opinion." See, *Sabel v. State,* 248 Ga. 10, 12 (282 SE2d 61) (1981) at p. 12.

before conviction." We, therefore, find this enumeration of error to be without merit.

(3) Defendants contend that the Unified Appeal Procedure is "in derogation of [their Fifth Amendment] right to remain silent" because by giving "the defendant an opportunity to state any objections he may have to defense counsel, or to the manner in which defense counsel has conducted or is conducting the defense" the defendant "is compelled to be a witness against himself."

The Fifth Amendment to the United States Constitution provides in pertinent part: "No person . . . shall be compelled in any criminal case to be a witness against himself."

Defendants have not demonstrated how *offering* a criminal defendant the opportunity to voice objections concerning his counsel or the manner in which his counsel is conducting his defense *compels* him to be a witness against himself. To inquire of the defendant whether he is satisfied with his counsel *protects* not only his Fifth Amendment rights but other constitutional rights as well. We cannot say that a defendant has suffered the denial of a constitutional right when he is offered the opportunity, prior to and during trial, to state that he is dissatisfied with his attorney's assistance. By affording a defendant numerous opportunities to raise questions or objections concerning his counsel's assistance, the Unified Appeal Procedure recognizes that prior to or during trial the problem of ineffective assistance of counsel may be more suitably remedied than after conviction and the imposition of the death sentence.

(4) We have found no authority for the position taken by defendant Wright's counsel at oral argument, and he has cited none to us, that "criminal defendants in general are not intelligent, [are] uneducated and [are consequently] not capable of making a knowing, intelligent waiver of their rights."

While it is true that "the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty," Johnson v. Zerbst, 304 U. S. 458, 462-3 (58 SC 1019, 82 LE 1461) (1938), where constitutional guarantees are at stake, the criminal defendant is entitled to the effective assistance of counsel to guide and warn him in determining whether to make an intentional relinquishment of a known right or privilege. See, in this regard, Boykin v. Alabama, 395 U. S. 238 (89 SC 1709, 23 LE2d 274) (1969); Schneckloth v. Bustamonte, 412 U. S. 218 (93 SC 2041, 36 LE2d 854) (1973); Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). Where the criminal defendant elects to waive the right to assistance of counsel, the record *must* show that the defendant "intelligently and understandingly rejected the offer." Carnley v. Cochran, 369 U. S. 506, 516 (82 SC 884, 8 LE2d 70)

(1961); Boykin v. Alabama, supra. See also, Johnson v. Zerbst, supra. While these cases uniformly place upon the State "an appropriately heavy burden" to demonstrate waiver, Schneckloth, supra, at 236, each recognizes that the average criminal defendant, absent a showing to the contrary, is capable of assisting in and participating in his defense and, once adequately apprised of his rights, is capable of making a knowing and intelligent decision of whether to abandon them.

(5) Defendants next argue that the Unified Appeal Procedure violates due process because it deprives a criminal defendant of the right to petition for writ of habeas corpus on the ground of ineffective assistance of counsel. We note initially that there is no right, constitutional or otherwise, to acquiesce in the ineffective assistance of counsel at trial in order to build error into the record. We have interpreted the Sixth Amendment right to counsel "as the right to effective counsel." *Young v. State,* 239 Ga. 53, 60 (236 SE2d 1) (1977). This means neither "errorless counsel . . . [nor] counsel judged ineffective by hindsight, but counsel . . . rendering reasonably effective assistance." Id; Mackenna v. Ellis, 280 F2d 592, 599 (5th Cir. 1960). Contrary to defendants' assertions, the purpose of the Unified Appeal Procedure is not to force a waiver of any rights. Rather, the Procedure is designed to "prevent the occurrence of error to the maximum extent feasible and to correct as promptly as possible any error that nonetheless may occur." 246 Ga. at A-5. Further, section (c) of Code Ann. § 27-2538 which authorizes this court to "establish by rules a unified motion for review procedure," provides: "[n]othing in this section or in the rules of the Supreme Court of Georgia shall limit or restrict the grounds of review or suspend the rights or remedies available through the procedures governing the writ of habeas corpus." Defendants' argument is without merit.

(6) Last, defendants argue that this court has exceeded its authority in making the rules which establish the Unified Appeal Procedure because the legislature "did not intend the Unified Appeal Procedure to be used as [it] . . . is now being used in the trial courts of this State." Rather, defendants contend that the "stated intent of the Legislature" was that the procedure be applied only to those "upon whom the sentence of death *has been imposed."* (Emphasis supplied.) Essentially, defendants argue that the procedure may not be used in cases where the State *seeks* the death penalty, but may be used only in those cases where the death penalty has been *imposed.*

Georgia Laws, 1980, pp. 390, 391 states as its purpose "to amend Code Chapter 27-25, relating to sentences and executions . . . so as to add a new Code section to be designated Code Section 27-2538; to

provide that the Supreme Court of Georgia shall establish by rules a unified motion for review procedure for presenting to the sentencing court and the Supreme Court of Georgia all possible challenges to the conviction, sentence and detention of defendants upon whom the sentence of death has been imposed, which challenges now are presented for review by motion for new trial, motion to withdraw a guilty plea, appeal, writ of habeas corpus or any other writ, motion or proceeding cognizable in the courts of this state . . ." The General Assembly passed a Resolution approving these rules for review procedures at the 1981 Session. See Ga. Laws, 1981, p. 1532.

Proceedings under the Unified Appeal Procedure are "applicable only in cases in which the death penalty is sought," 246 Ga. at A-5, and commence "[a]t the earliest possible opportunity after indictment." Id. at A-7. As noted above, the Unified Appeal Procedure establishes "a unified motion for review procedure"; this "motion" encompasses pre-trial, trial and certain review proceedings. See, 246 Ga. A-7 through A-16. It is logical that the Unified Appeal Procedure cannot be utilized to "review . . . challenges to the conviction, sentence [or] detention of defendants upon whom the sentence of death has been imposed," unless it is utilized in pre-trial and trial proceedings in cases where the death penalty is *sought.* Defendants are correct in stating that review by this court under the Unified Appeal Procedure is not authorized unless the death penalty is imposed; however, to say that it is proper to apply the Unified Appeal Procedure in reviewing cases in which the death penalty is imposed but not proper to apply it to the pre-trial and trial stages of those cases in which the death penalty is sought is unpersuasive. The General Assembly clearly provided for the establishment by this court through the Unified Appeal Procedure of "a series of check lists to be utilized . . . prior to, during and after the trial of cases *in which the death penalty is sought* . . . so that if the defendant is convicted and the sentence of death is imposed, the record and transcript of proceedings will be complete for unified review." (Emphasis supplied.) Ga. Laws, 1980, pp. 390-391. We find this enumeration to be without merit.

*Judgment affirmed. Jordan, C. J., Hill, P. J., Marshall, Clarke and Smith, JJ., concur.*

DECIDED SEPTEMBER 29, 1981 —
REHEARING DENIED OCTOBER 15, 1981 in CASE NO. 37734.

*Ronald G. Shedd,* for appellant (case no. 37734).
*Christopher A. Frazier,* for appellant (case no. 37739).

*F. Larry Salmon, District Attorney,* for appellee.
*Arthur K. Bolton, Attorney General, Mary Beth Westmoreland, Assistant Attorney General,* amicus curiae.