### 41766. CRAWFORD v. THE STATE.
(330 SE2d 567)

GREGORY, Justice.

Eddie Albert Crawford was convicted of the murder of his 29-month-old niece, Leslie Michelle English, and sentenced to death. The case is before this court on direct appeal, for review under the Unified Appeal Procedure, 252 Ga. A-13 et seq., and for review of the death sentence.[1]

---

[1] The crime was committed on September 25, 1983. The defendant was convicted on March 7, 1984 and sentenced to death on March 8, 1984. The motion for new trial was filed on April 6, 1984 and amended on August 21, 1984. The trial court denied the motion for new trial on October 11, 1984. The transcript was prepared and filed on October 26, 1984. The case was docketed in this court on November 21, 1984, and was argued on March 12, 1985.

The evidence at trial showed that the victim and the victim's mother, Wanda English, resided with Mrs. English's parents. The defendant was married to, but estranged from, one of Mrs. English's sisters at the time of the victim's death. At approximately 11:00 p. m. Saturday, September 24, 1983, Mrs. English readied the victim for bed. The defendant arrived at the victim's residence and asked Mrs. English to accompany him to a liquor store. Mrs. English agreed. The defendant was intoxicated and, en route from the liquor store, made an unsuccessful attempt to purchase marijuana. The two returned to Mrs. English's residence where the defendant asked Mrs. English to spend the night with him. When she refused, the defendant left.

Mrs. English encountered the defendant later that same night at the house of another of her sisters. During this visit the defendant kicked an ashtray off a table which struck Mrs. English. As Mrs. English picked up the ashtray's contents, the defendant "grabbed her and pushed her." Mrs. English yelled that she would not allow him to treat her like that, then threw the ashtray at him. As Mrs. English left her sister's home, the defendant swore and called to her, "I'll fix you."

During this time the victim was in the care of Mrs. English's father, Raymond Fuller. Mr. Fuller testified that before he went to bed at 3:00 a.m., he observed the victim sleeping and pulled the bedclothes about her. Mr. Fuller testified he returned to his own bed and fell asleep. He stated that "sometime later" he was awakened by the defendant walking through the house with a lighted cigarette lighter. Mr. Fuller saw the defendant walking through the victim's bedroom in the direction of the bathroom. As the defendant was a family member and frequent guest in his home, Mr. Fuller did not consider this unusual. Mr. Fuller testified he again fell asleep and did not wake up until 5:00 a.m. when Wanda English returned home and discovered the victim missing.

Charles Durham, who lives in a house adjacent to the Fullers, testified that between 3:45 a.m. and 4:00 a.m., he observed the defendant drive up to the Fuller home and exit his car, leaving the car headlights on and the motor running. Mr. Durham testified that "about five minutes later" he noticed the defendant's car drive away.

When Wanda English could not locate the victim upon her return home at 5:00 a.m., she initiated a search throughout the neighborhood. She observed the defendant in his car, parked with the motor running, in front of a neighboring house, and asked if he had seen the victim. The defendant replied that he had not. Later, when the victim's grandfather asked the defendant if he knew where the victim could be found, the defendant replied "Randy [the victim's father] done it."

In the following days the defendant gave three inconsistent sto-

ries concerning where he had been between the hours of 3:00 a.m. and 5:00 a.m. on September 25.[2] When interviewed by law enforcement officers on September 27, 1983, the defendant stated that he could remember speaking to the victim's grandfather before the victim's disappearance, but he remembered nothing more of what took place at the Fuller residence. The defendant told police that he remembered driving his car, with the victim in his lap, and trying to wake up the victim, "but she would not talk to [him.]" The defendant stated he believed the victim was "mad" because she would not respond to him. The defendant stated he stopped his car and walked "on pavement" with the victim in his arms. The defendant stated he remembered getting back into his car without the victim, but did not remember anything that had occurred in the interim.

The victim's body, clothed only in a pajama top, was discovered in a wooded area on September 26, 1983. An autopsy revealed the victim died as a result of asphyxiation. The victim had sustained a number of bruises and cuts about the left side of her face. There was a tear in the victim's vaginal opening. Based on the size and shape of the tear, the pathologist who performed the autopsy opined that it had been made by "an object more consistent with a penis than other objects." The pathologist stated his opinion that death occurred at approximately 4:30 a.m. on September 25, 1983.

The forensic evidence indicated that several head and pubic hairs consistent with those of the defendant were found on the victim's body. Carpet fibers found on the victim's body were consistent with the fibers of the carpet in the defendant's car.

1. The single count indictment charged that the defendant "did unlawfully and with malice aforethought, cause the death of Leslie Michelle English, a human being, by suffocation." The trial court charged the jury on the law of malice murder, and also charged the jury on the law of felony murder, the underlying felony being child molestation, OCGA § 16-6-4.[3] The jury returned a verdict of "guilty,"

---

[2] The defendant initially maintained he had slept in the home of one of the Fullers' neighbors until the neighbor disputed this story. The defendant then stated he had slept in his car, parked outside this neighbor's house. Later, the defendant stated he had spent the night with his estranged wife.

[3] The trial court gave the following charges on malice murder and felony murder.

"I charge you, Ladies and Gentlemen, of the Jury, that the Statutory Law of this State defines Murder as follows: a person commits murder when he unlawfully and with malice aforethought, either expressed or implied, causes the death of another human being. Malice is of two kinds, expressed and implied. Expressed malice is that deliberate intention unlawfully to take away the life of a fellow creature that is manifested by external circumstances capable of proof. Malice may be implied where no considerable provocation appears, and where all of the circumstances show an abandoned and malignant heart.

"In this connection I further charge you that in order to warrant a conviction of murder, it is essential for the State to prove the existence of malice aforethought beyond a reasonable

without specifying whether it had found the defendant guilty of malice murder or felony murder.

The defendant argues that he may not be convicted of felony murder as the indictment did not put him on notice of this charge. We agree. "It is axiomatic that a conviction upon a charge not made . . . constitutes a denial of due process." *Jackson v. Virginia*, 443 U. S. 307, 314 (99 SC 2781, 61 LE2d 560) (1979). "[A] defendant indicted only for malice murder cannot be convicted of felony murder unless the defendant has been put on notice of the felony by the facts alleged to show how the murder was committed." *McCrary v. State*, 252 Ga. 521, 524 (314 SE2d 662) (1984). The underlying felony charged by the trial court was child molestation. No facts are alleged in the indictment which would put the defendant on notice that he would be required to defend against this charge at trial.[4] Because of

---

doubt, as I have defined that term to you. That is, a preconceived intention to kill without justification or excuse. Malice, Ladies and Gentlemen, is a state of mind, an intention to kill under such circumstances as the Law would not justify nor excuse. No particular length of time is required for malice to be formed. I charge you that malice may (pause) must exist at the time of the killing in order for the killing to amount to murder. I further charge you that one may form the intent to kill unlawfully, do the act instantly, regret the deed as soon as it is done, and yet act with malice.

"*I further charge you, Ladies and Gentlemen of the Jury, that the statutory law provides that a person also commits the crime of murder when in the commission of a felony he causes the death of another human being, irrespective of malice.*

"I beg your indulgence, Ladies and Gentlemen. I·need to find one principle of Law to give you in connection with the principle that I have just given you, and I have lost my place.

"In this connection, Ladies and Gentlemen, I charge you that if you find and believe beyond a reasonable doubt as I have defined that term to you that this Defendant committed the homicide alleged in this Bill of Indictment, at the time he was engaged in the commission of a felony, I charge you, Ladies and Gentlemen of the Jury, that the word felony means a crime punishable by death or by imprisonment for life, or by imprisonment for more than twelve months.

"Now, in this connection, Ladies and Gentlemen, I charge you that the Statutory Law of this State provides as follows: that a person commits child molestation when he does any immoral or indecent act to or in the presence of or with any child under the age of fourteen years, with the intent to arouse or satisfy the sexual desires of either the child or the person, and I further charge you, Ladies and Gentlemen, that child molestation is a felony under Georgia Law.

"I further charge you in this connection that in order for a homicide to have been done in the perpetration of a felony, there must be some connection between the felony and the homicide. The homicide must have been done in pursuance of the unlawful act, and not collateral to it. It is not sufficient that the homicide occurred soon or presently after the felony was attempted or was committed. There must be such a relationship between the homicide and the felony that you find that the homicide occurred by reason of or as a part of the felony, or that it occurred before the felony was at an end, so that the felony had a legal relationship to the homicide and was concurrent with it in part, at least, and a part of it in an actual and material sense. A homicide is committed in the perpetration of a felony when it is committed by the accused while he is engaged in the performance of any act required for the full execution and completion of such felony." (Emphasis supplied.)

[4] The record reflects that when asked by the trial court, defense counsel stated he had no exceptions to the charge (other than an exception to the trial court's refusal to charge involuntary manslaughter). Failure to except to a charge on felony murder does not waive an

this due process violation the conviction must be set aside.

The ambiguous verdict makes it impossible for us to determine if the jury found the defendant guilty of malice murder or felony murder.[5] Although a construction of the verdict as being a conviction for malice murder would avoid the due process violation associated with felony murder, we acknowledge the well-settled rule that if a case has been submitted to the jury on several alternative theories, one of which is unconstitutional, a general verdict of guilty which does not indicate it was based upon one of the constitutional theories must be set aside. *Stromberg v. California*, 283 U. S. 359 (51 SC 532, 75 LE 1117) (1931);[6] *Sandstrom v. Montana*, 442 U. S. 510, 526 (99 SC 2450, 61 LE2d 39) (1979); *Leary v. United States*, 395 U. S. 6, 31-2 (89 SC 1532, 23 LE2d 57) (1969); *Ulster County v. Allen*, 442 U. S. 140, 159-60 fn. 17 (99 SC 2213, 60 LE2d 777) (1979); *Bachellar v. Maryland*, 397 U. S. 564, 570-1 (90 SC 1312, 25 LE2d 570) (1970). Therefore, we must reverse.

2. We have, however, examined the evidence supporting a conviction of either malice murder or felony murder, and conclude that a

---

objection to failure of the indictment to put the defendant on notice of the charges against which he will be required to defend at trial. Furthermore, we view the error as substantial and harmful as a matter of law so that it is subject to review by this court. OCGA § 5-5-24 (c).

[5] The cases of *Reed v. State*, 238 Ga. 457 (233 SE2d 369) (1977), *Burke v. State*, 248 Ga. 124 (281 SE2d 607) (1981) and *Walker v. State*, 254 Ga. 149 (327 SE2d 475) (1985), are distinguishable from the facts of this case. In each of these cases the defendant was indicted for malice murder in one count and a separate felony in another count. In each case the trial court charged the jury on both malice murder and felony murder. In all three cases the jury returned verdicts of "guilty" without specifying malice murder or felony murder. This court held that under these circumstances, the verdict is to be interpreted as one of felony murder in order that the defendant receive the benefit of the doubt. If the defendant is convicted of felony murder, he cannot be convicted separately of the underlying felony. It would be otherwise if he had been convicted of malice murder. Therefore he is benefitted by a construction of the verdict as one for felony murder.

In this case, however, the defendant was indicted in a single count indictment for malice murder. The trial court charged both felony murder and malice murder, and the jury returned an ambiguous verdict of "guilty." There was no separate count in this indictment for a felony, and thus there is no benefit to the defendant in construing the verdict as one of felony murder.

[6] In *Stromberg*, a California statute made it a crime to display a red flag, if done so for any one of three separate purposes. The single count indictment charged the defendant with all three grounds. At trial the court instructed the jury that it could convict if it found the defendant had displayed the red flag for any one of the three purposes. The jury returned a general verdict of guilty. On appeal, the U. S. Supreme Court ruled that one of the grounds was unconstitutional. The Supreme Court held that it could not eliminate, from the return of a general verdict, the possibility that the defendant had been convicted on the basis of the invalid ground. Thus the court concluded that where a case is submitted to the jury on alternative grounds, and a general verdict returned, a finding that any one of the grounds is unconstitutional will require that the conviction be set aside. The principle of *Stromberg* was most recently reaffirmed in *Sandstrom v. Montana*, 442 U. S. 510, 526 (99 SC 2450, 61 LE2d 39) (1979) and cases cited therein.

rational trier of fact could find beyond a reasonable doubt that the defendant committed either malice murder or felony murder. OCGA § 16-5-1. *Jackson v. Virginia*, 443 U. S. 307, supra. Since the evidence is sufficient to support a conviction of either malice murder or felony murder, the State may reindict the defendant for either malice murder or felony murder or both. *McCrary v. State*, supra, 252 Ga. at 525.

3. We need not reach the issues of whether the grand jury and traverse jury in this case were constitutionally composed of representative cross sections of the community. If the State elects to reindict and retry this case, and again seeks the death penalty, the trial court will be guided by the Unified Appeal Procedure, Rules II (A) (6) and II (C), in determining whether the grand and traverse juries are properly composed.

4. Prior to trial the defendant made a motion for state funds to obtain an independent psychological evaluation. The defendant also moved the trial court to rule that any information obtained in this evaluation would be protected under the attorney client privilege and work product doctrine. The trial court granted the motion for funds, but as to the request that the evaluation be declared privileged, the trial judge stated he was "not familiar enough with that area of the law right now to make a ruling. However, I will become so familiar and make a ruling *if it becomes necessary.*" (Emphasis supplied.)

The defendant maintains that the court's failure to rule on the matter at that time denied him due process of law by forcing him to "tap family sources for funding of a psychological evaluation." We need not reach the merits of the issue because we find the defendant abandoned that portion of his motion requesting that the evaluation be privileged. After the trial court stated it was unfamiliar with the law and would reserve ruling, the defendant declined to pursue the matter. He offered no authority to the trial court in support of his motion, and failed to evoke a ruling of law from the court. Instead he opted to obtain a psychological evaluation using private funds. Under these circumstances, we find the defendant has not been denied due process of law.

5. During the sentencing phase charge to the jury, the trial court in one instance stated the jury could find as a statutory aggravating circumstance "that the offense of murder was committed while the defendant was engaged in the commission of another capital felony: to wit, kidnapping." See OCGA § 17-10-30 (b) (2). The trial court later gave the same charge, except stated the jury could find as the supporting capital felony "kidnapping with bodily injury." The jury imposed the sentence of death finding as the aggravating circumstance, "kidnapping."

OCGA § 17-10-30 (b) (2) provides that the death penalty may be

imposed where the jury determines the evidence supports a finding that the murder was committed "while the offender was engaged in the commission of another capital felony. . . ." This court has construed the term "capital felony" as used in OCGA § 17-10-30 "in a generic sense to include those felonies which were capital crimes in Georgia at the time this section of our death penalty statute was enacted." *Peek v. State*, 239 Ga. 422, 432 (238 SE2d 12) (1977). The offense of kidnapping with bodily injury at the time our death penalty statute was enacted was punishable by life imprisonment or death.[7] OCGA § 16-5-40 (b); former Code Ann. § 26-1311. The offense of kidnapping where there was no bodily injury was punishable at that time by a maximum sentence of twenty years. OCGA § 16-5-40 (b); former Code Ann. § 26-1311. Therefore, kidnapping with bodily injury may be considered by a jury as a statutory aggravating circumstance, while "simple" kidnapping may not. It is clear that the statutory aggravating circumstance of "kidnapping" found by the jury in this case cannot support the death penalty.

6. We have examined defendant's remaining enumerations of error and find them to be either without merit or unlikely to occur on re-trial.

*Judgment reversed. All the Justices concur, except Hill, C. J., who concurs specially in Division 2, and Weltner and Bell, JJ., who dissent.*

HILL, Chief Justice, concurring specially.

I concur specially in Division 2 of the majority opinion based upon my understanding that, to be consistent with *McCrary v. State*, 254 Ga. 382 (2a) (329 SE2d 473) (1985), the state may reindict the defendant only for malice murder, or felony murder with the underlying felony being aggravated assault, or both. Where a person murders another by suffocation, as alleged in the original indictment, he assaults "with intent to murder" within the meaning of OCGA § 16-5-21 (a) (aggravated assault).[1]

On the other hand, in my view the defendant may not be reindicted for felony murder with the underlying felony being child molestation, or kidnapping. *McCrary v. State*, supra, Division 2b. Based upon this understanding, I concur specially in Division 2 of the majority opinion.

---

[7] While not applicable to the facts of this case, we point out that the offense of kidnapping for ransom was punishable by life imprisonment or death at the time our death penalty statute was enacted. OCGA § 16-5-40 (b); former Code Ann. § 26-1311.

[1] I conclude that the defendant can be reindicted for malice and felony murder because, in my view, he could have been convicted on the original indictment for felony murder with the underlying felony being aggravated assault.

WELTNER, Justice, dissenting.

I dissent.

As I understand the majority opinion, it rests principally upon the case of *Stromberg v. California*, 283 U. S. 359 (51 SC 532, 75 LE 1117) (1931). *Stromberg*, carefully examined, need not control this case. Fifty-five years ago, the U. S. Supreme Court struck down as unconstitutional a California statute because it violated the First Amendment. The statute made it a crime to "display a red flag . . . banner or device . . . in any public place . . . as a sign . . . of opposition to organized government." The same section of the penal code also made illegal any invitation or stimulus to anarchistic action or as an aid to propaganda that is of a seditious character. The United States Supreme Court found the first portion wanting, and because the verdict of guilty did not specify the ground upon which it rested, the court held that "it is impossible to say under which clause of the statute the conviction was obtained." 283 U. S. at 368. The court vacated the conviction, observing: "It may be added that this is far from being a merely academic proposition, as it appears, upon an examination of the original record filed with this Court, that the State's attorney upon the trial *emphatically urged upon the jury* that they could convict the appellant under the first clause alone, without regard to other clauses. It follows that instead of being permissible to hold, with the state court, that the verdict could be sustained if any one of the clauses of the statute were found to be valid, the necessary conclusion *from the manner in which the case was sent to the jury* is that, if any of the clauses in question is invalid under the Federal Constitution, the conviction cannot be upheld." (Emphasis supplied.) Id. 368.

It should be noted that the foundation for the court's reversal comes "from the manner in which the case was sent to the jury." Compare the manner in which *this* case was sent to the jury, which I now discuss.

1. In contrast to the prosecutor's argument in *Stromberg*, the district attorney in this case — in an argument consuming 45 pages of transcript — *not once* mentioned the offense of child molestation. His sole address to the question of felony murder was as follows: "He will likewise charge you, I am sure, concerning felony murder, in that it is an included offense of malice aforethought, and that is, that if you find this defendant, while doing a felony of some type, while not intending to actually kill someone, but just doing a felony, another commission of another criminal act, he kills that person, he likewise is guilty of the offense of murder." Importantly, the district attorney then proceeded directly to discuss, not sexual offenses, but choking and malice. "Try to choke someone with the purpose of shutting their mouth so they can't scream, and applying pressure, and knowing that

you are applying pressure to stop those screams, malice aforethought, I submit to you, ladies and gentlemen."

2. Another critical contrast in the manner in which this case was submitted to the jury is found in the charge of the trial court. A review of the attached excerpts[1] from the guilt-innocence phase charge will disclose that *in no less than 12 instances* the trial judge used the terms "crime charged in the indictment," "crime charged," "allegations of the crime charged" — and the like. (The crime alleged in the indictment was, of course, malice murder.)

More particularly, Items 6 and 7, reflect the court's charge on the *form* of the verdict. The court instructed the jury that if it found the defendant guilty of "the offense of murder as that is set out and alleged in this bill of indictment and as I have defined it to you, the form of the verdict would be 'We, the jury, find the defendant guilty.' " The verdict of the jury was "We, the jury, find the defendant guilty."

The charge must be considered as a whole. And it must be viewed as from the jury box. "The question, however, is not what the State Supreme Court declares the meaning of the charge to be, but rather

---

[1] 1. I charge you that *intent to commit the crime charged in this indictment* is an essential element that the State must prove beyond a reasonable doubt.

2. That the legal presumption of the innocence of this Defendant of *the crime charged against him in the Indictment . . .* and unless the evidence introduced here in Court, satisfies and convinces your minds and consciences to a moral and reasonable certainty and beyond a reasonable doubt that the accused is guilty *of the crime of which he is charged in the Indictment,* and each and every element thereof, and if your minds are not thus satisfied and convinced, then it would be your duty to acquit the defendant.

3. I charge you that the degree of conviction that is required as to the elements of *the crime charged in the Indictment . . . .*

4. The burden is on the State to prove beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis each and every material allegation *as set out in this Bill of Indictment,* including each element of *the crime charged,* and a failure to prove any of the essentials, would require an acquittal. Among the material allegations which must be so proven is that this defendant did commit in Spalding County, Georgia, the crime of *Murder as that is set out in this Bill of Indictment,* and as I will hereinafter define it to you, all of the allegations of the Indictment being material allegations with the exception of the date upon which the offense is alleged to have been committed. . . .

5. This Defendant has entered a plea of not guilty to the Indictment *and to the crime charged therein.* By this plea of not guilty, the Defendant has denied each and every element and *allegation set forth in the Indictment,* and as I have stated, the burden is upon the state to prove beyond a reasonable doubt all of the material elements and *allegations of the crime charged in* order for you to find this Defendant guilty.

6. If upon your consideration of this case you find and believe to the exclusion of every other reasonable hypothesis that this Defendant did commit the offense of murder *as that is set out and alleged in this Bill of Indictment* and as I have defined it to you, then you would be authorized to find the Defendant guilty. In such case, the form of your verdict would be: "We, the Jury, find the Defendant guilty."

7. If you are not satisfied that the Defendant is *guilty as charged,* or if you entertain a reasonable doubt as to his guilt, then . . . the form of your verdict would be: "We, the Jury, find the Defendant not guilty." (Emphasis supplied, as to all paragraphs.)

what a reasonable juror could have understood the charge as meaning." *Francis v. Franklin*, ___ U. S. ___ (slip opinion No. 83-1590, decided April 29, 1985), at p. 8.

So considered, this verdict can mean *only* guilty of murder as charged in the bill of indictment. There is no ambiguity.

3. This case is further distinguished from *Stromberg* by the nature of the evidence itself. Consider the facts. Crawford told the victim's mother, just before the murder, "G__ d__ it, I'll get you." He was seen in the victim's bedroom at 3:00 a.m. At 5:00 a.m., it was discovered that the victim was missing. Shortly thereafter, Crawford was seen in the neighborhood, and when asked if he knew where the child was, replied "Randy [the victim's father] done it." Crawford gave three inconsistent statements about where he was, but acknowledged being with the victim at the critical time, and carrying the victim in his arms. The victim was found in a wooded area. She died from asphyxiation. There was evidence of sexual assault.

I suggest that it is fanciful to ascribe to any jury hearing this evidence a finding that this defendant, with no intent to kill the victim, inadvertently caused her death (by strangulation) in the course of child molestation. Fine-spun legal theory aside, that is simply beyond the realm of reason.

We ought not to suffer our judicial system to become one in which theory alone reigns, and where guilt is irrelevant.

DECIDED MAY 31, 1985 —
REHEARING DENIED JUNE 18, 1985.

*Johnny B. Mostiler, Tamara Jacobs*, for appellant.

*Johnny L. Caldwell, Jr.*, District Attorney, *J. David Fowler, Christopher C. Edwards*, Assistant District Attorneys, *Michael J. Bowers*, Attorney General, *Eddie Snelling, Jr.*, Senior Attorney, for appellee.