41981. WELCH v. THE STATE.
(331 SE2d 573)

BELL, Justice.

Appellant, George Welch, Sr., was convicted in Rabun County on two counts of murder. He was sentenced to death on one count and to life imprisonment on the other. The case is here on direct appeal, for review under the Unified Appeal Procedure, and for the sentence re-

view required by OCGA § 17-10-35.[1]

*Facts*

Shortly after 8:00 p.m. on July 19, 1983, Reverend J. C. Quilliams returned to the residence of Jay Fisher, having taken the latter's housekeeper, Jane Snyder, to church services at a local nursing home. Reverend Quilliams left the house at 8:20 p.m. Twenty minutes later, two customers at a fruit stand across the road heard gun shots, screaming, and then more gunshots. At approximately 9:00 p.m., George Welch visited a local tavern, bleeding from wounds to his head and hand. He told one of the bartenders (a relative) that he had been to the Fisher place and had "shot both them son-of-a-bitches," the old man four or five times and the woman who lived with him twice.

The victims' bodies were discovered the next day by a neighbor. Jay Fisher had been shot five times, and Jane Snyder twice. A .38 caliber pistol was discovered by investigating officers under a living room chair. A number of .22 casings were found at the scene, and four .22 bullets were recovered from the victims' bodies. Ballistics examination showed that the victims had been shot with the same .22 caliber gun. A .38 caliber bullet was found imbedded in the ceiling of Jay Fisher's bedroom.

Blood found on Ms. Snyder's leg, on a doorknob, and on a porch handrail was consistent with that of Welch (and inconsistent with 98% of the general population, including the two victims).

Welch testified that he went to see Jay Fisher about a "main screen" (used in the rock-crushing business) that he had left on Fisher's property years earlier. Fisher was in bed and Welch sat down in a nearby chair. They were discussing matters and suddenly Fisher said, "All you can get is the top of your . . . head blowed off." Then he shot Welch. The bullet penetrated his hand and glanced off his head. Welch testified that he remembered no further events of the evening.

We have reviewed the record pursuant to Rule IV (B) (2) of the Unified Appeal Procedure (252 Ga. A-13 et seq.) and find that a rational trier of fact could find from the evidence beyond a reasonable doubt that Welch murdered Jay Fisher and Jane Snyder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

---

[1] The jury returned its sentencing verdict February 4, 1984. A motion for new trial was filed February 17, 1984, and amended September 19, 1984. The motion, as amended, was heard October 25, 1984, and denied November 15, 1984. The case was docketed in this court January 23, 1985, and orally argued April 18, 1985.

## Review Under the Unified Appeal Procedure

1. Prior to trial, the state gave Welch written notice of the statutory aggravating circumstances on which the state intended to rely, including the state's contention that the murders occurred during the commission of the offense of burglary. See OCGA § 17-10-30 (b) (2). Welch filed a motion in limine seeking to preclude the state from "mentioning in either [its] opening statements or closing statements, or during any part of [its] case-in-chief, [its] contentions [that Welch was] in the commission of a burglary during the . . . indicted offenses [which did not include burglary] unless a proper case is first shown."

The court withheld a final ruling on the motion until the close of the evidence at the guilt phase of the trial. Evidence had been presented that the latch to the screened front door was bent as if it had been forced open, and the state argued that whether or not a burglary had been committed by the defendant was a jury question. The court agreed and denied the defense motion. Moreover, the court soon thereafter announced its intention to charge and did charge felony murder, the underlying felony being burglary. Welch excepted to this charge.

The jury was given a verdict form, as follows:

### Verdict

COUNT I - DEATH OF JAY FISHER

We, the jury find the Defendant ＿＿＿＿＿＿ of murder.

We, the jury find the Defendant ＿＿＿＿＿＿ of voluntary manslaughter.

COUNT II - DEATH OF JANE SNYDER

We, the jury find the Defendant ＿＿＿＿＿＿ of murder.

The jury wrote the word "Guilty" (of murder) on both counts.

In his motion for new trial, Welch complained of the felony murder charge.

Under the Unified Appeal Procedure, this court must "review each assertion of error timely raised by the defendant during the proceedings in the trial court regardless of whether or not an assertion of error was presented to the trial court by motion for new trial, and regardless of whether error is enumerated in the Supreme Court." Rule IV (B) (2). In light of this rule, we shall address the trial court's charge on felony murder.

" 'It is an elementary principle of criminal procedure that no person can be convicted of any offense not charged in the indictment. There may, of course, be a conviction of a lesser offense than that expressly named in the indictment, where the former is necessarily included in the latter, and also in some cases in which the lesser is not

so included in the greater offense but where the language used in the indictment is sufficient to embrace the smaller offense.'" *McCrary v. State*, 252 Ga. 521, 523 (314 SE2d 662) (1984) (quoting *Goldin v. State*, 104 Ga. 549, 550 (30 SE 749) (1898)).

Here, the indictment charged two counts of malice murder. Burglary was not charged, nor were facts alleged which would show that the offense of burglary was committed. Therefore, Welch could not lawfully have been convicted of felony murder. *McCrary v. State*, supra.

If the jury found Welch guilty of felony murder, or if there is a reasonable possibility that it did so, Welch's convictions may not stand. *Crawford v. State*, 254 Ga. 435 (1) (330 SE2d 567) (1985). Construing the verdict form together with the charge of the court, it is clear that the jury was ostensibly authorized to find Welch guilty of murder on each count of the indictment on either a felony murder theory or a malice murder theory. Thus, we cannot tell by the verdict which theory the jury relied upon. Since it is "impossible for us to determine if the jury found the defendant guilty of malice murder or felony murder[,]" id. at 439, we must reverse.

Because the evidence is sufficient to support convictions for malice murder, the state may retry Welch for malice murder. *Crawford v. State*, supra.

### Enumerations of Error

2. For reasons stated in *Spivey v. State*, 253 Ga. 187 (5) (319 SE2d 420) (1984), we conclude that the trial court did not err by failing to instruct the jury that if it recommended mercy on each of the two murder counts, the jury could recommend that the resulting life sentences be served consecutively. Anything to the contrary in *Anglin v. State*, 244 Ga. 1 (1) (257 SE2d 513) (1979), is hereby overruled. Enumeration 2 therefore presents no error.

3. Two days after the victim's bodies were discovered, investigators received information from an informant that Welch had been treated for a gunshot wound. Investigator Don Page went to see Welch, who admitted that his hand had been injured, but claimed that he had injured it while shoeing a horse. The next day, the sheriff paid Welch a visit. According to Welch's son, who was present, the sheriff said "that he had heard rumors, and he wanted to obtain a blood sample, would it be all right, and [Welch] said yes; said I ain't got nothing to hide." A blood sample was obtained, and the results of the analysis were admitted at trial.

In his fourth enumeration of error, Welch contends that taking the blood sample violated his constitutional privilege against self-incrimination. We do not agree. Even compelled blood tests do not vio-

late the self-incrimination clause of the United States Constitution, *Schmerber v. California*, 384 U. S. 757, 760-65 (86 SC 1826, 16 LE2d 908) (1966), nor require a suspect to "give *testimony* tending in any manner to be self-incriminating" within the meaning of Art. I, Sec. I, Par. XVI of the Georgia Constitution. *Raines v. White*, 248 Ga. 406 (284 SE2d 7) (1981). (Emphasis supplied.)

A suspect's Fourth Amendment right to be free of unreasonable searches and seizures applies to the compelled withdrawal of blood, *Schmerber v. California*, supra; however, Welch raises no Fourth Amendment claim, and in any event, in view of the undisputed testimony that Welch was not under arrest when he gave his consent, it is clear that the blood test here was not compelled. Thus the court did not err by refusing to suppress the results of the blood analysis.

4. The trial court did not err by refusing to direct a verdict of life imprisonment simply because the state presented no *additional* evidence at the sentencing phase of the trial. Evidence presented at the guilt phase of the trial was properly considered by the jury and established the presence of the § b (2) statutory aggravating circumstance (OCGA § 17-10-30 (b) (2)). See *Eberheart v. State*, 232 Ga. 247, 253 (206 SE2d 12) (1974). Enumeration 8 is without merit.

5. The trial court did not err by charging (at the guilt phase of the trial): "Malice *may be inferred* where no considerable provocation appears and where all of the circumstances of the killing show an abandoned and malignant heart." (Emphasis supplied.) Compare OCGA § 16-5-1(b). Whether or not Welch was provoked was a jury issue, and the jury was not required to believe Welch's testimony that he was shot first. *Young v. State*, 251 Ga. 153, 157-158 (303 SE2d 431) (1983). Accord *Brooks v. Kemp*, 762 F2d 1383 (11th Cir., Case No. 83-8028, decided May 31, 1985) (slip opinion at p. 14). For this reason, Enumeration 10 presents no error.

6. The court did not err by failing to instruct the jury at the sentencing phase of the trial that it could impose a death sentence only if it found that Welch intended to kill. Compare *Walker v. State*, 254 Ga. 149 (16) (327 SE2d 475) (1985). Enumeration 12 therefore presents no error.

7. Concerning Enumeration 14, we find that the state was not barred from seeking the death penalty simply because Welch was re-indicted, even if the purpose of the re-indictment was to remedy the state's failure to timely begin following the Unified Appeal Procedure under the first indictment.

8. Regarding Welch's seventeenth enumeration of error, we do not agree that the practice of death-qualification of jurors is unconstitutional. *Mincey v. State*, 251 Ga. 255 (2) (304 SE2d 882) (1983).

9. Nor do we agree, contrary to Enumeration 18, that our death penalty laws are unconstitutional.

10. Enumeration 19 is answered by *Sliger v. State,* 248 Ga. 316 (282 SE2d 291) (1981).

11. Welch's contention that the evidence does not support the jury's finding of a statutory aggravating circumstance (double murder) is premised upon his theory that as to the death of Jay Fisher he is guilty of, at most, only voluntary manslaughter. The evidence, however, is, as we stated previously, sufficient to support his conviction on two counts of murder, and it is therefore sufficient to support the jury's sentencing verdict beyond a reasonable doubt. OCGA § 17-10-35 (c) (2).

12. We need not address Welch's remaining enumerations of error. We find that they are not likely to occur on retrial, or that the court's dispositions were appropriate.

*Judgment reversed. All the Justices concur, except Weltner, J., who dissents.*

WELTNER, Justice, dissenting.

I dissent for the reasons set out in my dissent in *Crawford v. State,* 254 Ga. 435 (330 SE2d 567) (1985).

DECIDED JULY 3, 1985 —
REHEARING DENIED JULY 23, 1985.

*Oliver & Oliver, Robert F. Oliver, William R. Oliver,* for appellant.

*Michael H. Crawford, District Attorney, Michael J. Bowers, Attorney General, Eddie Snelling, Jr., Staff Assistant Attorney General,* for appellee.