**Inman JAMES, Jr., Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–79–270.**

Court of Criminal Appeals of Oklahoma.

Nov. 13, 1981.

Gary Peterson, Deputy Appellate Public Defender, Patti Palmer, Asst. Appellate Public Defender, Norman, for appellant.

Jan Eric Cartwright, Atty. Gen., Larry Oakes, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Presiding Judge:

The appellant is before this Court on an appeal from his conviction of Murder in the First Degree and a sentence of life imprisonment, in Oklahoma County District Court Case No. CRF–78–2472.

On the evening of February 4, 1978, Lovena G. Rieger was killed by a .22 caliber gunshot wound to the head while working at a Russell Stover Candy Store in Oklahoma City. The fatal injury occurred during the course of an attempted robbery with a dangerous weapon, perpetrated by the appellant, Donald Johnson, and Gerald Fisher.

Conflicting testimony was presented regarding the details of the crime. According to the appellant, Gerald Fisher suggested the robbery, and the three men all agreed. He and Fisher entered the store, leaving Johnson in the car, and it was Fisher's job to hold the gun on the victim while appellant got the money out of the cash register. However, contrary to their plans, Fisher shot the victim, and the appellant ran from the store. Later that evening, the appellant saw Fisher and Johnson again at Johnson's home.

Donald Johnson testified that it was the appellant's idea to rob the store, and that the appellant went into the store alone as he and Fisher waited in the car. He saw the appellant head toward the car, which was parked on a dead-end street across Northwest Expressway from the store, but then turn away and run in another direction as a police vehicle passed the scene.

Gerald Fisher testified that the appellant originated the plan for the robbery and that Fisher remained in the car with Johnson as the appellant went into the store. His story was similar to Johnson's, and he also denied owning a gun.

The wife of Donald Johnson, Angela, testified that, when the appellant returned to her home after the homicide, he told her that he had shot the woman during the robbery. She hung up his coat and noticed an object which felt like a gun in the pocket. Fisher and Johnson then returned to the Johnson home, and the three men left together. Further, she said that, after her husband's arrest, the appellant told her that her husband should tell the police about him, the appellant, if the police pressured him too much.

According to Maurice Fortune, the appellant, Johnson, and Fisher came to his home after the robbery on February 4, 1978, and one of them asked him if he had heard about a killing on the news. He testified that he did not see a gun in the possession of the three men that night, that he had never seen the appellant with a gun, and that he saw Fisher with a .22 pistol on the night before the robbery-homicide.

Fortune's statement to the police in May of 1978 led to the arrests of Johnson and Fisher, which in turn led to their statements identifying Inman James as the gunman.

I.

The first argument is that Instruction No. 6, in which the court defined robbery with a dangerous weapon to include the attempted crime, was error and that the foundation crime in this case cannot support a conviction of murder in the first degree because it was not a complete crime. The State did not prove that any money was taken.

The crux of this problem lies in the use of the language in Laws 1973, ch. 76, § 1; now 21 O.S.Supp.1980, § 801, to instruct on the underlying robbery with firearms, and, additionally, the application of felony murder to the case at hand, where the robbery was not complete.

First, the allegation that it was error to instruct according to Section 801 of Title 21, rather than Section 791, fails for the following reasons: First, Section 801 is definitive of the crime of robbery with firearms; and second, only armed robbery, and not robbery by force or fear, will provide a foundation for murder in the first degree. See *Morris v. State*, 603 P.2d 1157 (Okl.Cr. 1979); and *Swaim v. State*, 569 P.2d 1009 (Okl.Cr.1977).

Next, it is claimed that the language in the felony murder statute, in which the definition includes those homicides perpetrated "in the commission of" a felony, has not been interpreted since the enactment of the present statute. See Laws 1976, 1st Ex.Sess., ch. 1, § 1; now 21 O.S.Supp.1980, § 701.7(B). However, this language was construed under the preceding statutes, which included similar language. See Laws 1973, ch. 167, §§ 1 and 3; also 21 O.S.Supp. 1973, §§ 701.1(2) and 701.3. It was held that murder in the first degree was proved when the killing took place "during an armed robbery," *Sanders v. State*, 556 P.2d 611 (Okl.Cr.1976). Although Laws 1973, ch.

167, § 1, contained language specifically referring to attempted felonies and Laws 1976, 1st Ex.Sess., ch. 1, § 1, does not, the present statute includes a felony which also expressly incorporates attempts. Murder based upon an armed robbery was also construed under R.L.1910, § 2313 (subsequently 21 O.S.1971, § 701), a statute which, like the present statute, did not specifically consider attempted felonies. This Court held that a conviction of murder in the first degree was appropriate when a killing occurred "in the perpetration of" an armed robbery, *although nothing was taken. Howington v. State*, 35 Okl.Cr. 352, 250 P. 941 (1926). The substantive elements of these statutes regarding this issue remain essentially the same, and the interpretive case law applies to Section 701.7(B), supra.

▉ The statute defining Robbery with Firearms, Laws 1973, ch. 76, § 1; now 21 O.S.Supp.1980, § 801, is unique in its inclusion of the attempt to commit robbery with firearms. In reviewing this case, this Court has concluded that the Legislature intended to include attempted armed robbery in the felony murder statute, just as they intended to include attempted armed robbery in the statute defining armed robbery. The argument that, because the money was not taken the appellant did not commit Murder in the First Degree in the commission of Robbery with Firearms, is unpersuasive. The felony murder statute is intended to prevent certain felonies as well as homicide, and the Legislature, in its wisdom, determined that there are certain felonies in which homicide is most likely to occur. The likelihood of a homicide is not lessened by the fact that the perpetrator of the robbery ran without the money or goods or that the perpetrator committed the crime only to discover that the anticipated money or goods did not exist or was not in the possession of the victim. Therefore, this Court has determined that, in the commission of an armed robbery or an attempted armed robbery, murder in the first degree may be committed under 21 O.S.Supp.1980, § 701.-7(B).

## II.

The appellant alleges that he was denied due process of law and conviction by a unanimous verdict because the jury was not instructed to find unanimously that he had committed murder in the first degree either with malice aforethought or while committing robbery with a dangerous weapon. And, although the jury was instructed that their verdict must be unanimous, they were not instructed that the factual base upon which the finding of guilt was made had to be a unanimous decision.

▉ The due process clause of the Constitution demands that each element of a crime be proven. *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). However, all of the elements of this crime were proven. The State established a prima facie case of murder in the first degree by proving, first, that the homicide occurred during an armed robbery, and, therefore, fell within felony murder; and second, that the appellant had committed the homicide with premeditation. No violation of due process occurred.

▉ A unanimous verdict is guaranteed by this State's Constitution. Okla.Const., art. 2, § 19. In 1961, this Court construed that right to mean that a verdict of guilty on a charge of two distinct acts of rape had to reflect a unanimous finding of guilt based upon one specific act or on both acts, but not on either one or the other act. See *Cody v. State*, 361 P.2d 307 (Okl.Cr.1961).

However, the question now before this Court is one of first impression. Unlike *Cody*, there are not two separate offenses, but like *Cody* there is no indication of the jury's findings in determining guilt. The issue for resolution is whether the *Cody* rule applies to the case at hand where there are two alternative theories upon which to base the conviction for first degree murder, each of which was alleged and proven.

Other jurisdictions have encountered this problem, often in reviewing convictions based upon alternative theories of premedi-

tated murder and felony murder. In *Connecticut v. Edwards*, 163 Conn. 527, 316 A.2d 387 (1972), the defendant was indicted conjunctively with premeditated and felony murder in the first degree, based upon an underlying robbery. The jury was then charged disjunctively, as was the jury in the case before this Court. The conviction was affirmed because there was but a single crime charged and the alternatives went to the factual basis of the crime, not the crime itself.

In *People v. Taggart*, 621 P.2d 1375 (Colo. 1981), the Colorado court held that the defendant was not denied a unanimous verdict by merit of the fact that the general verdict did not specify which alternative was the cause of the crime. And, in *State v. Hazelett*, 8 Or.App. 44, 492 P.2d 501 (1972), the Oregon Court upheld a jury instruction that the verdict must be unanimous as to the guilt or innocence of murder in the first degree but that they need not reach a unanimous decision on its foundation in either felony murder or premeditated murder. See also *State v. Wilson*, 220 Kan. 341, 552 P.2d 931 (1976); and *Wells v. Commonwealth*, Ky., 561 S.W.2d 85 at 88 (1978).

Having examined these decisions, and having found that the State did prove both premeditation and felony-based murder, this Court finds that the failure of the jury to indicate the basis of their finding of guilt was not error.

### III.

According to the appellant, the granting of immunity to three witnesses was improperly executed and deprived the appellant of his constitutional rights to a jury trial and against double jeopardy.

### A.

■ First, he alleges that Judges Hunter and Owens lacked authority to grant the immunity and that reversal is the proper remedy. He argues that immunity can only be granted by the court authorized to "finally try" the matters relating to the immunity, *Scribner v. State*, 9 Okl.Cr. 465, 132 P.

933 (1913), and that only the trial judge is authorized to grant immunity to the State's witnesses.

However, *Scribner* is not dispositive of the issue before this Court. In that case, this Court held that a justice of the peace who granted immunity was not authorized to do so because the justice of the peace court was without jurisdiction to finally try the case. However, justice of the peace courts have been abolished. Under the Constitution there is one district court for each judicial district with no inferior courts, and the special judges are judges of the district court. Okla.Const., Art. 7, § 7. The limitations on the authority of special judges are defined by statute. Okla.Const., Art. 7, § 8(h); and Laws 1978, ch. 87, § 3; now 20 O.S.Supp.1980, § 123.

In the case now before this Court, Judge Cannon, who was presiding at the trial, apparently believed that a special judge lacked the authority to grant immunity in view of *Nuckols v. Van Wagner*, 511 P.2d 1110 (Okl.Cr.1973). In that case, it was held that a special judge *sitting as a magistrate at the preliminary hearing* could not grant immunity because he was not vested with the authority to finally adjudicate the offense related to the immunity.

Although the law is uncertain as to the necessity of Judge Cannon's action in enlisting district judges to preside over immunity hearings, a review of the record before this Court does not indicate that these precautions were in error. Furthermore, there were no objections at trial regarding the presiding of Judges Hunter and Owens over the hearings, and the only objections went to the issue of granting immunity to the accomplices.

### B.

It is also contended that the substitution of judges deprived the district court of jurisdiction and violated the appellant's constitutional rights.

■ First, he says that the integrity of the trial was destroyed by the substitution of the judges. However, none of the au-

thority cited is concerned with the granting of immunity by a different judge. Furthermore, nothing in the record indicates that Judge Cannon left the courtroom during the hearings nor that he "lost control" of the proceedings.

Additionally, he argues that the substitution violated his constitutional rights to a jury trial and against double jeopardy. The cases cited by the appellant regarding the right to a jury trial are concerned with situations in which a new judge has replaced the original judge for the duration of the trial, thereby impairing the judge's ability to adequately instruct the jury. The cited authority is inapplicable and this position has no merit.

As far as the double jeopardy claim, the appellant's argument fails to reveal how the facts of this case are in any way related to the double jeopardy prohibition.

## IV.

As his final allegation, the appellant urges this Court to find that certain remarks by the prosecutor in closing argument to the first stage of the trial were error and that they should be considered on appeal despite the appellant's failure to object at trial. This Court has examined those arguments and finds that they were error and that they had the potential to inflame the jury. However, they did not implicate the appellant in an unsolved homicide in Oklahoma City, although failure to so implicate the appellant does not mean that it was proper for the prosecutor to remind the jurors of an unsolved mass murder.

The error requires no relief, however, in light of the evidence of guilt and the minimum sentence given the appellant by the jury.

The judgment and sentence is, therefore, affirmed.

CORNISH, J., concurs.

BUSSEY, J., concurs in results.