**Adolph Honel MUNSON, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–85–479.**

Court of Criminal Appeals of Oklahoma.

June 24, 1988.

As Corrected June 29, 1988.

Rehearing Denied July 20, 1988.

Thomas Purcell, Asst. Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., M. Caroline Emerson, Asst. Atty. Gen., Oklahoma City, for appellee.

OPINION

PARKS, Judge:

Appellant, Adolph Honel Munson, was tried by jury in Custer County District Court, Case No. CRF–84–129, and convicted of First Degree Murder (21 O.S. 1981, § 701.7) (Count I), Kidnapping (21 O.S. 1981, § 741) (Count II), and Robbery With Firearms (21 O.S. 1981, § 801) (Count III), before the Honorable Gary McGinn, District Judge. The jury found the murder was committed to avoid a lawful arrest or prosecution, that appellant constituted a continuing threat to society, 21 O.S. 1981, § 701.12(5) & (7), and sentenced appellant to death on Count I, ten (10) years on Count II, and forty (40) years on Count III. Judgment and sentence was imposed in accordance with the jury's verdict. We affirm Counts I and II, and reverse Count III.

At 11:45 p.m. on June 27, 1984, Alma Hall left home to work the midnight to seven shift at Love's Country Store in Clinton, Oklahoma. Her husband, Ralph Hall, testified that when Mrs. Hall left she was wearing earrings, a wristwatch, and wedding rings, which he identified respectively as State Exhibits 9, 10 and 11. Mrs. Hall relieved Audrey Alexander, who worked from 4:00 p.m. to midnight. She said Ms. Hall was wearing a Love's smock and her name tag that night. At 1:40 a.m., Tracey Wilmeth and her cousin, Pam Nelson, stopped at Love's and spoke with Mrs. Hall until 1:50–1:55 a.m. Around 2:02 a.m., Daniel Adams stopped at the Love's store and, seeing no clerk in the store, checked the refrigerator and the restrooms finding them empty. When he noticed some change on the floor, and a coat and purse behind the registers, he called the police. Clinton Police Officer John Stout arrived about 2:10 a.m., and determined that Alma Hall was missing, as well as $330.00 from one of the registers.

On the weekend of June 23–24, 1984, appellant was on work release from the Jess Dunn Correctional Center in Taft, Oklahoma. His status was changed to escape on June 25, 1984, when he failed to return to the institution. On the evening of June 24, 1984, appellant visited his girlfriend, Linda Brown, in Tulsa, Oklahoma. That same night, Ms. Brown and appellant had an argument, and appellant left in Brown's 1978 silver-gray Chevrolet Nova, which had a crease on the side and was trimmed with red stripes. Ms. Brown identified State Exhibit No. 22 as depicting her car. Ms. Brown reported the car stolen, and it was later recovered in Los Angeles, California, in August of 1984. On cross-examination, Ms. Brown said appellant had a set of keys to the Nova, that he drove it to his job on the work release program and on weekend passes, that he made some of the car payments, and that she did not drive. The car was registered in the name of Ms. Brown and her daughter.

At trial, seventeen-year-old Tina Zalud testified that on the afternoon of June 27, 1984, while she was working as a desk clerk at the Glancy Motel in Clinton, Oklahoma, she checked in the appellant who filled out a registration card under the name "Joe Johnson." Ms. Zalud assigned appellant to Room 103. She testified that the car appellant drove looked like a Nova with red stripes. Gordon Wells, Jr., who was a guest at the Glancy Motel during June, 1984, and stayed in Room 107, testified that he was approached by appellant in the motel parking lot on the afternoon of June 27, 1984. According to Mr. Wells, appellant was concerned about having enough money and gas to get to Dallas, Texas, and asked Mr. Wells to estimate the gas mileage on appellant's car. Mr. Wells said appellant's car was either a silver Nova or Buick with a red stripe, and a crease on the side. Wells identified State Exhibit No. 22 as depicting the car driven by appellant. David Thornburg, another guest at the Glancy Motel, testified at preliminary hearing that he saw the appellant in a silver Nova with a red stripe backing into the motel parking lot between 2:30–3:00 p.m. on June 27, 1984. He also identified State Exhibit No. 22 as depicting the

car driven by appellant. Mr. Thornburg said that later that afternoon he saw appellant take a pistol out of the trunk of his car and then return to his motel room.

Between 2:00–2:30 a.m. on June 28, 1984, Martin Hytle, a guest in Room 104 of the Glancy Motel, was awakened by a loud high pitched scream, which sounded like a woman, and a heavy thump against the wall coming from Room 103. When he heard the door to Room 103 open and close, he looked out the window and saw an unidentified black man standing in front of a car backed into a parking space. When Mr. Hytle left the next morning around 5:30 a.m., the car was gone.

After 8:00 a.m. on June 28, 1984, Betty Miller, a maid at the Glancy Motel, was cleaning Room 103 when she observed what appeared to be bloodstains on the sheets and pillows, which were wadded up in the middle of the bed, on the mattress pad, and on some towels on the floor. She showed the stained linen to the owner-manager, Gerald Klimke. Mr. Klimke then examined Room 103, and he and Mrs. Miller found a gold earring near the door. Both Miller and Klimke identified State's Exhibit No. 8 as the earring they found in Room 103. Mr. Klimke turned the earring over to Lieutenant Tom Siler of the Clinton Police Department. Mr. Klimke identified appellant as the black man he saw on June 27, 1984, who checked into the Glancy Motel driving a gray '78 or '79 Chevy with a red stripe on the side.

While driving his tractor on June 28, 1984, Jackie Latimer, a farmer in Elk City, saw a lady's blue blouse and a Love's Country Store smock with Alma Hall's name tag on it in a ditch beside a dirt road. Both items were stained. Around 10:00 p.m. that night, Lt. Siler searched Room 103, found a spent .22 caliber slug under the television, and saw a skinned area on the wall where the bullet had apparently ricocheted.

On July 4, 1984, Jerrell Russell, Jr., found a woman's body some four and one-half (4 1/2) miles northeast of Interstate 40 between Shamrock and McClean, Texas, lying face down on a blanket in the brush,

with a bloodsoaked white bath towel nearby. Lt. Siler went to Shamrock to investigate, and was given an earring taken from the body which matched the earring found in Room 103 at the Glancy Motel in Clinton, Oklahoma, and also a watch and wedding rings, which were identified as State Exhibits 9, 10 and 11. Siler found a label at the scene with the word "Dundee" on it, which was the brand of linen used at the Glancy Motel. He also obtained head hair samples from the decedent. The body was positively identified as Alma Hall through fingerprinting.

In August 1984, the 1978 Chevrolet Nova identified as the one stolen from Linda Brown in Tulsa, Oklahoma, was recovered in Los Angeles, California. On August 16, 1984, Lt. Siler and OSBI Agent David Sauls flew to Los Angeles to speak with appellant, who had been arrested on an Oklahoma warrant for escape. Prior to any questioning, appellant signed a written waiver of his *Miranda* rights. He told the officers he had an argument with his girlfriend, Linda Brown, on the evening of June 26, 1984, that he drove Ms. Brown's 1978 Nova to his sister's house where he switched tags, that he had a subsequent altercation with a black male at his girlfriend's house, that after everyone was gone he later obtained his clothes and ransacked his girlfriend's house, and that he left heading west for Los Angeles. Appellant could not remember what route he took, as he had been drinking heavily. He said he stopped at a motel somewhere, that he picked up two hitchhikers, one male and one female, before he reached Los Angeles, and that after he arrived in Los Angeles the Nova was stolen.

Lorna Umfleet, Assistant Director of Medical Records for Baptist Medical Center in Oklahoma City, testified that laboratory reports showed the decedent's blood type was A. Mary Long, an OSBI forensic serologist, examined State Exhibits 14, 14A and 19, respectively the most recent bloodstain sample from the mattress in Room 103, a bloodstain sample from the decedent's smock, and appellant's blood sample. She determined that the bloodstains on Ex-

hibits 14 and 14A could have come from the same source, but that Exhibit 19 definitely came from a different source.

Ann Reed, an OSBI forensic serologist, examined State Exhibit 1, the decedent's smock, and found human blood group A stains on it. She testified that State Exhibit 19, appellant's blood sample, was also blood group A. She identified the most recent stain on State Exhibit 14, taken from the mattress in Room 103 at the Glancy Motel, as blood group A. She admitted that an older stain on the mattress might have been blood type O. She found a hair caught in a vent cover underneath the dash on the passenger side of the 1978 Nova, after it was recovered in California, that was microscopically consistent with a sample head hair taken from the decedent, Alma Hall. Ms. Reed further testified that a hair found in Room 103 of the Glancy Motel was consistent with a sample head hair taken from appellant. She examined State Exhibits 8 and 9, which consisted of two earrings found respectively in Room 103 of the Glancy Motel and on the decedent's body when it was discovered, and determined that the two earrings were consistent in length, height, and circular measurements, as well as the number of ridges present. Finally, Ms. Reed stated that a "Dundee" label, State Exhibit 20, found near the decedent's body, was consistent with a towel missing a label found near the decedent's body, State Exhibit 16, and that the label and towel were consistent with State Exhibit 15, a towel taken from Room 103 at the Glancy Motel.

Dr. Ralph Erdmann, a forensic pathologist from Amarillo, Texas, performed the autopsy on Alma Hall. Her body was badly decomposed and maggot infested. He found two entry bullet wounds to the head, one on each side, which were the cause of death. The bullet that exited the head was never recovered. The other bullet did not appear to exit the head, but it was never found. Dr. Erdmann further stated that the decedent suffered a very severe blunt trauma to the mouth, which displaced teeth, and which occurred immediately prior to, at, or after death. Death occurred within a minute following the gunshot wounds. He testified the decedent had been dead eight days, plus or minus two days, and that the left ear was removed after death. Dr. Erdmann did not believe the decedent was shot at the place where her body was found. Due to the dried-out and maggot infested condition of the body, Dr. Erdmann could not determine the caliber of the bullet wounds with certainty.

Donald Pribbenow, an OSBI handwriting expert, gave his opinion that a comparison of the appellant's handwriting exemplar (State Exhibits 7 & 7A), and the signature "Joe Johnson" and other customer information on the Glancy Motel registration slip for Room 103 (State Exhibit 6), showed that both were written by the same person. Alan Cornelius, an OSBI criminalist expert in trace analysis, testified that he analyzed State Exhibits 8 and 9, two earrings, with an x-ray spectrophotometer, and that both contained the same elements and metallic content, and in his opinion, were identical.

Donald Bruner, an inmate at the Jess Dunn Correctional Center, testified that appellant told him he escaped, and went to "some little town" in Oklahoma where he robbed a lady at a convenience store, kidnapped her, killed her, and dumped her body in a wooded area. Bruner, who was serving fifteen years for a second degree murder conviction, testified he did not receive any promises or special treatment for his testimony.

Timmie Klein, a Southwestern Bell Telephone employee, testified that a collect call was made from the pay telephone outside the Glancy Motel in Clinton, Oklahoma, to the A.D. James residence in Muskogee, Oklahoma, at 5:08 p.m. on June 27, 1984. Advergis D. James testified that he received a collect call from appellant, whom he had known for two years, during the late afternoon of June 27, 1984, and that appellant wanted to talk to James' wife, who was at work.

Two witnesses testified during appellant's case-in-chief. Linda Brown, appellant's girlfriend, testified that appellant took about $400.00 from their joint savings account when he left Tulsa. The testimony

of Harvey Pratt, an OSBI artist, was read from a transcript of his preliminary hearing testimony. Mr. Pratt drew a composite drawing of the man at the Glancy Motel as described by Wanda Adams and Tina Zalud. He stated that the composite drawing had general similarities with the actual features of the appellant, but that there were several variances, including the fact that appellant had a beard and longer hair at trial and appeared to be younger in the drawing.

No rebuttal testimony was presented. During the second stage, neither side presented any additional evidence. The State incorporated all first stage evidence without objection.

## I.

### PRETRIAL ISSUES

#### A.

■ In his supplemental brief, appellant contends in his first two assignments that the trial court erred in failing to provide funds for the services of an expert serologist, an expert in hair analysis, and an investigator. In pretrial motions, trial counsel requested funds for investigative assistance and an independent chemical analysis on numerous state exhibits. (O.R. 105, 109) The trial court ultimately denied the funds, advising trial counsel that he would have to pay for such services and then seek reimbursement for the expenses incurred in the representation of his indigent client from the Oklahoma Supreme Court. *See Bias v. State*, 568 P.2d 1269, 1272–73 (Okla.1977). Appellant was tried in June, 1985, prior to the enactment of 22 O.S.Supp. 1985, § 464(B), which became effective July 8, 1985, and provided in capital cases that a trial court may, upon application of an indigent defendant demonstrating the necessity for an expert witness, provide access to expert witnesses reasonably necessary to the adequate preparation and presentation of his defense.

Appellant relies primarily on *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). *Ake*, however, has not been extended to include investigative or expert assistance other than a psychiatrist. *See Woodard v. State*, 743 P.2d 662, 664–67 (Okla.Crim.App.1987) (Parks, J., Concurring in part and Dissenting in part); *Standridge v. State*, 701 P.2d 761, 764 (Okla.Crim.App.1985). After *Ake*, the United States Supreme Court declined to specify what, if any, showing would entitle an indigent accused to investigative or other expert assistance, finding no deprivation of due process where the defendant "offered little more than undeveloped assertions that the requested assistance would be beneficial...." *Caldwell v. Mississippi*, 472 U.S. 320, 324, 105 S.Ct. 2633, 2637 n. 1, 86 L.Ed.2d 231 (1985). Most recently, only Justices Marshall and Brennan have agreed to confront the issue of "whether and when an indigent defendant is entitled to non-psychiatric expert assistance." *Johnson v. Oklahoma*, —— U.S. ——, 108 S.Ct. 35, 37, 98 L.Ed.2d 167 (1987) (Marshall, J., dissenting to certiorari denial, joined by Brennan, J.). It has been held that the effective assistance guarantee of the due process clause requires a reversal on appeal from a denial of such assistance "only where a defendant has established prejudice by clear and convincing evidence." *Mason v. Arizona*, 504 F.2d 1345, 1352 (9th Cir.1974), *cert. denied*, 420 U.S. 936, 95 S.Ct. 1145, 93 L.Ed.2d 412 (1975). Here, we cannot say appellant has demonstrated substantial prejudice from the lack of the foregoing expert and investigative assistance. *See Coleman v. Brown*, 802 F.2d 1227, 1237 (10th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 2491, 96 L.Ed.2d 383 (1987).

#### B.

■ In the third assignment raised in his supplemental brief, appellant asserts the trial court erred in overruling a pretrial motion to discover the names of all witnesses having knowledge of the case, and to appoint a magistrate to review the State's files to ensure that all exculpatory evidence was revealed. Appellant does not claim the suppression of any specific favorable evidence, and the record indicates that the State provided appellant with the numerous

names and addresses of state witnesses prior to trial.

The disclosure required by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963), is not a constitutional rule of discovery, but is a rule of fundamental fairness based on due process. *United States v. Agurs*, 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976); *United States v. George*, 778 F.2d 556, 560 (10th Cir.1985). "[T]he prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial...." *United States v. Bagley*, 473 U.S. 667, 675–76, 105 S.Ct. 3375, 3380, 87 L.Ed. 2d 481 (1985). A defendant is not generally entitled to search the prosecutor's files for anything potentially favorable. *Winterhalder v. State*, 728 P.2d 850, 852 (Okla. Crim.App.1986). Appellant has failed to show that the prosecution suppressed favorable evidence. *United States v. Wolf*, 839 F.2d 1387, 1391–92 (10th Cir.1988); *Dyke v. State*, 716 P.2d 693, 700 (Okla. Crim.App.1986). Appellant has not demonstrated a constitutional violation in the failure to conduct an *in camera* inspection and review of the State's files. *Cf. Pennsylvania v. Ritchie*, 480 U.S. 39, ——, 107 S.Ct. 989, 1003, 94 L.Ed.2d 40 (1987).

■ Appellant claims he was denied equal protection because the scope of discovery in civil cases under 12 O.S.Supp. 1982, § 3203(B)(1), is broader than in criminal cases. The Oklahoma Discovery Code, 12 O.S.Supp.1982, §§ 3201–3215, by its own terms is limited to civil cases: "The [Oklahoma] Discovery Code shall govern the procedure for discovery in all suits of a *civil* nature in all courts in this state." (emphasis added) While a comparable criminal discovery code would undeniably promote efficiency and fairness in the orderly administration of criminal justice, as evidenced by recent consideration in the Oklahoma Legislature, at the present time no such legislation has been enacted. Appellant cites no relevant caselaw in support of this assignment in his brief; the five cases he cited by letter just prior to oral argument are not

on point, as they do not involve criminal discovery claims. Appellant's claim is rejected because he has failed to provide relevant argument and citations of authority. *Coulter v. State*, 734 P.2d 295, 300 (Okla. Crim.App.1987).

## II.

### JURY SELECTION ISSUES

■ Appellant argues in his eighth assignment that the trial court abused its discretion in denying appellant an opportunity to rehabilitate prospective jurors Ice and McKellips. The record shows that both were properly excused under *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). When the trial court excused McKellips, trial counsel stated, "[w]e might make a short record" and the trial judge responded, "[n]o, we'll make a record later." Trial counsel made no attempt to rehabilitate Ice. On the basis of the foregoing, we cannot say that appellant's trial counsel was improperly denied an opportunity for rehabilitation. *See Stouffer v. State*, 738 P.2d 1349, 1361 (Okla.Crim.App.1987); *Banks v. State*, 701 P.2d 418, 423 (Okla.Crim.App.1985).

## III.

### GUILT–INNOCENCE ISSUES

#### A.

■ In his first assignment of error, appellant argues the trial court was without jurisdiction to instruct the jury on first degree felony-murder where the information charged first degree malice aforethought murder. Appellant was initially charged with first degree malice aforethought murder. On November 19, 1984, an amended information was filed adding kidnapping and armed robbery charges. After preliminary hearing on January 22–25, 1985, appellant was bound over on these three charges. The trial court instructed the jury on first degree malice aforethought murder, and first degree felony-murder based on the underlying felonies of kidnapping and armed robbery. No objection to the felony-murder instruction

was made by either defense co-counsel, and thus, the issue was not properly preserved for appellate review. *See* 12 O.S.1981, § 578; 12 O.S.1981, § 2104; *United States v. Lotspeich*, 796 F.2d 1268, 1273 (10th Cir.1986); *Mitchell v. State*, 733 P.2d 412, 414 (Okla.Crim.App.1987).

▮▮▮▮ We will address appellant's contention, however, as lack of jurisdiction can be raised for the first time on appeal. *Johnson v. State*, 611 P.2d 1137, 1145 (Okla.Crim.App.1980), *cert. denied*, 449 U.S. 1132, 101 S.Ct. 955, 67 L.Ed.2d 120 (1980). A trial court acquires no jurisdiction to try an accused where the information is insufficient. *Smith v. State*, 572 P.2d 262, 265 (Okla.Crim.App.1977). "No ...information is insufficient, nor can the trial, judgment, or other proceedings ...be affected, by reason of a defect ...which does not tend to ...prejudice ...the substantial rights of the defendant upon the merits." 22 O.S.1981, § 410. Regarding the constitutional sufficiency of the information, we turn to appellant's second assignment urging he was deprived of notice of the nature and cause of the accusation against him because he was tried on the theory of felony-murder, which was not set forth in the information. Okla. Const. art. II, § 20.

Although not cited by either appellant or appellee, it has previously been held that where an information charges first degree malice aforethought murder, a conviction may be had for felony-murder if supported by the evidence. *See Moore v. State*, 82 Okl.Crim. 317, 169 P.2d 575, 579 (1946), and cases cited therein. *Accord State v. Barncord*, 240 Kan. 35, 726 P.2d 1322, 1326 (1986); *State v. Earp*, 250 Or. 19, 440 P.2d 214, 217–18 (1968), *cert. denied*, 393 U.S. 891, 89 S.Ct. 212 (1968). An information is sufficient if it (1) contains the elements of the offense charged, (2) fairly informs the accused of the charges against which he must defend, and (3) enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. *See Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974); *Smith v. State*, 572 P.2d 262, 265

(Okla.Crim.App.1977). Here, the information contained the essential elements for the crimes of first degree malice aforethought murder, kidnapping, and armed robbery, is sufficient to bar future prosecution for the same offense, and appellant has not shown that he was misled by it. *See Wolfenbarger v. State*, 710 P.2d 114, 115 (Okla.Crim.App.1985), *cert. denied*, 476 U.S. 1182, 106 S.Ct. 2915, 91 L.Ed.2d 544 (1986). If appellant had not been put on notice of the underlying felonies that he would be required to defend against, due process considerations would have required a reversal. *See Welch v. State*, 254 Ga. 603, 331 S.E.2d 573, 576 (1985); *Crawford v. State*, 254 Ga. 435, 330 S.E.2d 567, 570–71 (1985). Since appellant was charged with malice aforethought first degree murder, kidnapping, and armed robbery of the decedent at the same time, we find he was put on notice that he could be tried for felony-murder, on the underlying felonies of kidnapping and/or armed robbery. *See McCrary v. State*, 252 Ga. 521, 314 S.E.2d 662, 665–66 (1984). Accordingly, the trial court's instructing on felony-murder does not constitute reversible error here.

▮▮▮▮ Nonetheless, because the jury's verdict does not specify whether appellant was found guilty of malice-aforethought murder or kidnapping-murder or armed-robbery murder, the verdict must be interpreted as one of felony-murder in order that appellant receive the benefit of the rule that a defendant cannot be convicted of felony-murder and the underlying felony. *Crawford v. State*, 254 Ga. 435, 330 S.E.2d 567, 571 n. 5 (1985). *See Harris v. Oklahoma*, 433 U.S. 682, 683, 97 S.Ct. 2912, 2913, 53 L.Ed.2d 1054 (1977); *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977); *Castro v. State*, 745 P.2d 394, 405 (Okla.Crim.App. 1987); *Jefferson v. State*, 675 P.2d 443, 447 (Okla.Crim.App.1984). *See also Walker v. State*, 254 Ga. 149, 327 S.E.2d 475, 479 (1985), *cert. denied*, 474 U.S. 865, 106 S.Ct. 185, 88 L.Ed.2d 154 (1985). Although this issue was not raised in the trial court or on appeal, we find that it is plain error reviewable under 12 O.S.1981, § 2104(D). To determine which felony formed the basis for

felony-murder where more than one underlying felony is charged, one must look first to the information and second to the evidence. *Blankenship v. State*, 247 Ga. 590, 277 S.E.2d 505, 507 (1981). Here, the information charged separate counts of armed robbery and kidnapping, and both were instructed on as underlying felonies for first degree murder. Because the armed robbery was the initial felony which began the chain of events ultimately leading to the victim's death, this offense merged with the felony-murder conviction. *Id.* 277 S.E.2d at 507–08. Therefore, the armed robbery conviction on Count III is reversed and remanded with instructions to dismiss. *Castro*, 745 P.2d at 405.

### B.

 In his fourth assignment of error, appellant urges that the trial court erred in admitting the transcript of David Thornburg's preliminary hearing testimony. He argues that the State failed to demonstrate unavailability by a showing of due diligence. A witness is not "unavailable" for purposes of the confrontation clause of the Sixth Amendment, "unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Barber v. Page*, 390 U.S. 719, 725, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968). The State has the burden of establishing that "the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness." *Ohio v. Roberts*, 448 U.S. 56, 74–75, 100 S.Ct. 2531, 2543, 65 L.Ed.2d 597 (1980).

Assistant District Attorney David Duncan last spoke with Thornburg following preliminary hearing, when Thornburg was requested to inform the district attorney's office of any address or telephone changes. (Tr. 418) Custer County Court Clerk Irene Pruitt testified that she issued a subpoena on behalf of the prosecution pursuant to the Uniform Act to Secure Attendance of Witnesses From Without a State, 22 O.S. 1981, §§ 721–727, to Thornburg's last known address in Omaha, Nebraska. (Tr. 415–16) On June 12, 1985, twelve days prior to trial, upon motion by the prosecutor, District Judge Gary McGinn issued a mate-

rial witness certificate under 22 O.S.1981, § 723(A) to secure Thornburg's attendance at trial. (O.R. 202–03) On June 19, District Judge Keith Howard of Omaha, Nebraska, issued a summons compelling Thornburg's appearance. (O.R. 217–18) On June 21, the Douglas County Court Attorney informed the prosecution that the summons on Thornburg was "returned without service, as after diligent search and inquiry, the within named ...DAVID LEE THORNBURG ...[was] NOT FOUND....." (O.R. 216, 219) Prosecutor Duncan informed the trial court that the Chief Prosecutor in Omaha, Nebraska, stated that Thornburg's father told Nebraska authorities that his son had got married, moved away, and that he had not heard from him.

On the basis of the foregoing, we find that the State has met its burden of establishing the actual unavailability of Thornburg despite good-faith and due diligent efforts to secure his attendance at trial. *See* 12 O.S.1981, § 2804(A)(5); *Vuletich v. State*, 735 P.2d 568, 570 (Okla.Crim.App. 1987). When Thornburg testified at preliminary hearing, he was thoroughly cross-examined by defense co-counsel, who served as co-counsel at trial. Thornburg's testimony was taken under oath before a judicial tribunal equipped to provide an accurate record. Therefore, we also find that Thornburg's former testimony bore adequate "indicia of reliability" so as to satisfy the confrontation clause of the Sixth Amendment. *See Ohio v. Roberts*, 448 U.S. at 67–70, 100 S.Ct. at 2540–41; 12 O.S.1981, § 2804(B)(1); *Britt v. State*, 721 P.2d 812, 816 (Okla.Crim.App.1986). This assignment is without merit.

### C.

 Appellant asserts in his fifth assignment that the trial court erred in restricting his cross-examination of Dr. Ralph Erdmann and Donald Bruner. Appellant first complains that defense counsel was not allowed to question Dr. Erdmann concerning a change in his testimony at preliminary hearing that a .22 caliber weapon could not have caused the gunshot wounds suffered by the victim. Having

examined the record, it is clear that Dr. Erdmann qualified his statement at preliminary hearing and at trial to the extent that decomposition and maggot activity could have enlarged the entry wound, so that it was possible that it was caused by a .22 caliber. Contrary to appellant's assertion, there is nothing in the record to indicate that the prosecutor directed Dr. Erdmann to change his testimony. Appellant next claims that the trial court improperly refused to allow defense counsel to impeach Mr. Bruner with a prior inconsistent statement made at preliminary hearing. The record shows that defense counsel had previously impeached Bruner on his prior inconsistent statement, and that an objection was sustained on the ground that the question had already been asked and answered. Appellant finally argues that Bruner should have been required to answer the question of whether appellant knew Bruner was an informant. No evidence was introduced to show that Bruner had personal knowledge of this matter. *See* 12 O.S. 1981, § 2602. Moreover, no offer of proof was made. *See* 12 O.S.1981, § 2104(A)(2). Appellant has failed to establish that the trial court abused its discretion. *Sherrick v. State*, 725 P.2d 1278, 1281 (Okla.Crim. App.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 935, 93 L.Ed.2d 986 (1987).

### D.

In his seventh assignment of error, appellant contends that his right to a unanimous jury verdict was violated by the trial court's instructing the jury on the alternative theories of malice aforethought and felony-murder. Appellant asks this Court to overrule our prior holding in *James v. State*, 637 P.2d 862, 865–66 (Okla.Crim. App.1981), rejecting the same argument. *James* was reaffirmed in *Plunkett v. State*, 719 P.2d 834, 841 (Okla.Crim.App. 1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 675, 93 L.Ed.2d 725 (1986), and *Newsted v. State*, 720 P.2d 734, 737–38 (Okla.Crim. App.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986). We find that the foregoing cases are dispositive of this assignment, as the evidence supported both premeditated and felony murder.

### E.

In the fourth assignment raised in his supplemental brief, appellant argues the trial court erred in failing to suppress the hair found in the 1978 Nova, which was registered in the names of Linda and Regina Brown. A pretrial motion to suppress was overruled on the ground that appellant had no standing to object to the search of his girlfriend's car. Defense counsel argued that appellant was a consensual custodian of the car. (Mot.H.Tr. 43–45) Linda Brown reported the car stolen (PH Tr. 632), and testified that appellant had taken the car without her permission. (Tr. 775) When the hair, State Exhibit 4, was admitted into evidence, defense counsel had no objection. (Tr. 865) Thus, this issue was not properly preserved for appellate review. *See* 12 O.S.1981, § 2104(A)(1); *Ellison v. State*, 493 P.2d 837, 840 (Okla.Crim. App.1972), *cert. denied*, 409 U.S. 862, 93 S.Ct. 151, 34 L.Ed.2d 109 (1972). In any event, appellant has the burden of showing that he had a reasonable expectation of privacy that society is prepared to recognize as reasonable. *See Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980); *Rakas v. Illinois*, 439 U.S. 128, 131 n. 1, 99 S.Ct. 421, 423 n. 1, 58 L.Ed.2d 387 (1978); *Smith v. State*, 702 P.2d 1063, 1064 (Okla.Crim.App. 1985). Appellant was not in possession of the car when it was searched, nor has he established that he drove the car with the permission of the owner or that he borrowed the car under circumstances that would imply permissive use, thereby showing standing. *See Cooks v. State*, 699 P.2d 653, 658 (Okla.Crim.App.1985), *cert. denied*, 474 U.S. 935, 106 S.Ct. 268, 88 L.Ed.2d 275 (1985); *Champeau v. State*, 678 P.2d 1192, 1196 (Okla.Crim.App.1984), *cert. denied*, 469 U.S. 880, 105 S.Ct. 244, 83 L.Ed.2d 183 (1984); *State v. Constantino*, 732 P.2d 125, 126–27 (Utah 1987). Based on the foregoing, we cannot say the trial court erred in ruling that appellant was without standing to object to the search of the 1978 Nova.

### F.

In the fifth assignment of error raised in his supplemental brief, appellant claims the

trial court erred in admitting the in-court identifications of the defendant by four eyewitnesses at trial. Appellant has not supported his contentions with any relevant citations to caselaw, and we will not address such unsupported assignments of error. *See Coulter v. State,* 734 P.2d 295, 300 (Okla.Crim.App.1987).

## IV.

### PUNISHMENT ISSUES

 In his sixth assignment of error, appellant asserts that the Oklahoma death penalty statutes are generally being applied in an overbroad manner, and more specifically that the avoiding lawful arrest or prosecution and continuing threat aggravating circumstances, 21 O.S.1981, § 701.12(5) & (7), have been applied in an unconstitutionally overbroad manner. We have rejected similar contentions that the continuing threat aggravating circumstance is being applied in an arbitrary or vague manner, and we are not persuaded to the contrary by appellant's assertions here. *See Walker v. State,* 723 P.2d 273, 285 (Okla.Crim.App.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 599, 93 L.Ed.2d 300 (1986); *VanWoundenberg v. State,* 720 P.2d 328, 337 (Okla.Crim.App.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986). Appellant has not supported his contentions regarding the avoiding lawful arrest or prosecution aggravating circumstance with relevant argument and citations of authority, and therefore, we will not address it. *Coulter,* 734 P.2d at 300. The Oklahoma death penalty statutes have previously been held to be constitutional. *See Jones v. State,* 660 P.2d 634, 643 (Okla.Crim.App.1983). This assignment is without merit.

## V.

### MANDATORY SENTENCE REVIEW

#### A.

 Finally, pursuant to 21 O.S. Supp.1987, § 701.13(C), we are called upon to determine (1) whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor, and (2) whether the evidence supports the jury's finding of a statutory aggravating circumstance as enumerated in 21 O.S.1981, § 701.12.

#### 1.

Having reviewed the record, we cannot say that the jury was influenced by passion, prejudice, or any other arbitrary factor contrary to Section 701.13(C)(1).

#### 2.

The jury found the existence of two aggravating circumstances: (1) the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution, and (2) the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. 21 O.S.1981, § 701.12(5) & (7).

The existence of the avoiding arrest or prosecution aggravating circumstance focuses on the intent of the killer, and can be inferred from circumstantial evidence. *Stouffer v. State,* 738 P.2d 1349, 1361–62 (Okla.Crim.App.1987). Here, there was evidence that appellant escaped, stole a car, registered at a small town motel under an alias name, expressed concern over having sufficient gas money, and robbed Alma Hall to get money to continue his flight from authorities. Hall was the only witness to the robbery and was kidnapped by appellant, killed, and her body disposed of in an isolated area. We find there was sufficient evidence from which a rational trier of fact could have found beyond a reasonable doubt that appellant murdered Hall to avoid lawful arrest or prosecution. The evidence of the appellant's crime spree after escaping, consisting of kidnapping, armed robbery, and murder, supports the continuing threat aggravating circumstance. We find there was sufficient evidence from which a rational trier of fact could have found appellant constituted a continuing threat beyond a reasonable doubt.

B.

A majority of this Court holds that proportionality review is no longer necessary. *Smith v. State*, 737 P.2d 1206, 1217 (Okla. Crim.App.1987); *Foster v. State*, 714 P.2d 1031, 1041 (Okla.Crim.App.1986), *cert. denied*, ——— U.S. ———, 107 S.Ct. 249, 93 L.Ed. 2d 173 (1986). Nevertheless, in accordance with my view that the retroactive application of 21 O.S.Supp.1985, § 701.13(C), effective July 16, 1985, to pending cases renders the enactment an *ex post facto law*, I have compared the sentence imposed herein to previous cases, *see Castro v. State*, 745 P.2d 394, 409–10 nn. 3, 4 (Okla.Crim.App. 1987), and find the sentence to be proper.

Accordingly, finding no error warranting reversal or modification, the judgments and sentences for First Degree Murder (Count I) and Kidnapping (Count II) are AFFIRMED. For the reasons stated in Part III(A), the judgment and sentence for Robbery With Firearms (Count III) is REVERSED and REMANDED with instructions to DISMISS.

BRETT, P.J., concurs.

BUSSEY, J., concurs in result.