Kimberly Colette WILLIAMS,
Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–87–700.

Court of Criminal Appeals of Oklahoma.

March 1, 1991.

Jamie D. Pybas, Asst. Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen., Susan Stewart Dickerson, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

Kimberly Colette Williams, the sixteen-year-old appellant, was charged as an adult in October of 1986 for the crimes of First Degree Murder (21 O.S.Supp.1982, § 701.7), First Degree Burglary (21 O.S.1981, § 1431), and First Degree Robbery (21 O.S. 1981, § 791), pursuant to 10 O.S.Supp.1985, § 1104.2. Appellant's motion to be certified as a juvenile was denied by the District Court of Oklahoma County on December 16, 1986. On March 16, 1987, this Court declined to assume jurisdiction to prohibit further proceedings. Appellant was subsequently tried by jury and convicted on all three counts in Oklahoma County District Court Case No. CRF–86–5410. In accordance with the jury's recommendation, appellant was sentenced respectively to life and two twenty (20) year terms of imprisonment. The sentences were ordered to be served concurrently. Appellant's appeal from the order declining to certify her as a juvenile was affirmed by this Court in *K.C.W. v. State,* 736 P.2d 525 (Okl.Cr.1987). The instant action arises from appellant's Judgments and Sentences upon conviction.

At approximately 7:00 a.m. on September 6, 1986, after spending the night with several friends, appellant, thirteen-year-old T.C., and Cynthia Morgan walked to a neighborhood park in Oklahoma City. Once there, T.C. discussed robbing an elderly man whose home abutted the park. After Morgan declined to participate in the robbery, appellant agreed to join T.C.

Appellant and T.C. gained entry into the home of George Curlee by breaking the back door window. The seventy-five year old Curlee was awakened when the two assailants began searching the premises for money. Thereupon, T.C. began hitting Curlee with a board which he had carried into the house. There was conflicting evidence as to whether the initial assault began in the front room of Curlee's home or in his bedroom. However, it is apparent

that most of the beating occurred in the victim's bedroom, where at least part of the time he was held down by appellant while T.C. administered the blows. Unable to locate any money, appellant and T.C. grabbed a half empty bottle of whiskey and fled the scene. The board used to inflict Mr. Curlee's fatal injuries was left by T.C. in an adjoining yard under some debris.

Cynthia Morgan testified that she observed appellant and T.C. leave Curlee's house and stated that appellant was carrying a whiskey bottle and had blood on her hand. Morgan also testified that appellant confided that she had participated in the assault and robbery. Also introduced into evidence was a tape recorded interrogation of appellant, wherein she detailed her involvement in the robbery. At trial, appellant admitted kicking the victim, but denied holding Mr. Curlee while T.C. beat him.

The body of George Curlee was discovered on the evening of September 6 by two neighbors. An autopsy revealed that Curlee died as a result of multiple injuries to several different parts of his body. Included among his injuries were multiple wounds to his skull and brain, a broken left ankle, twelve (12) broken ribs, a fractured sternum, two (2) broken wrists, and various head and body lacerations and bruises. The medical examiner opined that a majority of the injuries were caused by a long, narrow, blunt instrument. Blood and hair samples taken from the board discovered in the neighboring yard were determined to be consistent with that of the victim. Furthermore, foreign matter taken from the victim's head wounds were determined to be paint chips consistent in color with the paint on the suspect board.

■ In her first assignment of error, appellant asserts that her convictions violate double jeopardy prohibitions. Appellant first claims that she should not have been convicted of both burglary and robbery, because both offenses arose out of the "same transaction." However, this Court has held that "burglary and other offenses committed within the structure burgled do not merge, and conviction of both does not violate double jeopardy pro-

tections." *Brecheen v. State*, 732 P.2d 889, 899 (Okl.Cr.1987), *cert. denied* 485 U.S. 909, 108 S.Ct. 1085, 99 L.Ed.2d 244 (1988). *See also Simmons v. State*, 748 P.2d 996, 999 (Okl.Cr.1988); *Ziegler v. State*, 610 P.2d 251, 254 (Okl.Cr.1980). "The burglary is complete upon entry with intent to commit a crime. 21 O.S.1981, § 1431. The offenses committed after entry are separate and distinct." *Brecheen*, 732 P.2d at 899. Accordingly, we find that appellant's convictions for both burglary and robbery do not offend the Double Jeopardy Clause of either the state or federal constitutions.

■ Appellant's second argument in this assignment of error is premised upon the fact that the Information charged alternative murder theories; either that the murder was committed with malice aforethought or that it was committed during the commission of the burglary. Because the jury did not specify which alternative theory it relied upon in convicting appellant of murder, she maintains that this Court must conclude that she was convicted under the felony-murder theory and reverse her burglary conviction.

This Court was presented with a substantially identical argument in *Munson v. State*, 758 P.2d 324 (Okl.Cr.1988), *cert. denied* 488 U.S. 1019, 109 S.Ct. 820, 102 L.Ed.2d 809 (1989). There, the defendant was charged with First Degree Murder under alternative theories; either that he committed the crime with malice aforethought or while in the commission of kidnapping or while in the commission of armed robbery. Because the jury's verdict did not specify under which theory appellant was convicted, this Court held that "the verdict must be interpreted as one of felony-murder in order that appellant receive the benefit of the rule that a defendant cannot be convicted of felony-murder and the underlying felony." *Id.* 758 P.2d at 332. *See also Perry v. State*, 764 P.2d 892, 898 (Okl.Cr.1988). Appellant Munson's armed robbery conviction was then reversed after this Court determined it to be the underlying felony for the felony-murder. *Munson*, 758 P.2d at 333.

Notwithstanding the State's argument to the contrary, we find that the *Munson* decision controls the present case. The State does not dispute that appellant was charged with alternative theories of murder or that the jury was so instructed. However, the State cites two jury instructions which it argues "had the effect of directing the jury to adopt the premeditated theory of murder in order to convict the defendant." One of the cited instructions set forth that the crime of first degree murder has a specific criminal intent of malice aforethought, while failing to explain that this element exists only in connection with the premeditated murder alternative. (O.R. 96). The other instruction informed that the State had the burden of proving malice aforethought, again without referring to a particular murder theory. (O.R. 96). Although these instructions *may* have had the effect of directing the jury to adopt the premeditated theory of murder, we are unwilling to so conclude. Rather, we find that the rationale announced in *Munson* requires us to REVERSE appellant's conviction for First Degree Burglary and REMAND it to the trial court with instructions to DISMISS.

Next, appellant alleges that her right to a unanimous jury verdict was violated when the trial court instructed the jury on the alternative theories of murder and the jury returned a general verdict of guilty. As appellant correctly avers, this Court has previously upheld similar instructions where both theories were proved. *See Munson,* 758 P.2d at 334; *Newsted v. State,* 720 P.2d 734, 737–38 (Okl.Cr.1986), *cert. denied* 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986); *Plunkett v. State,* 719 P.2d 834, 841 (Okl.Cr.1986), *cert. denied* 479 U.S. 1019, 107 S.Ct. 675, 93 L.Ed.2d 725 (1986); and the seminal case of *James v. State,* 637 P.2d 862, 865–66 (Okl.Cr.1981). However, appellant maintains that *James* and its progeny are inapplicable to the present case because the evidence was insufficient to prove malice aforethought murder. Specifically, appellant argues that the State failed to prove that she or T.C.

had a design to effect the victim's death.[1] We disagree.

Initially, we note that when intent is an element of a crime, it is a question for the trier of fact to determine from competent evidence, and this Court will not disturb such determination if a rational trier of fact could have found beyond a reasonable doubt the presence of intent when viewing the evidence in the light most favorable to the State. *Treece v. State,* 753 P.2d 377, 378 (Okl.Cr.1988). Furthermore, a design to effect death may be inferred from the fact of killing, 21 O.S.1981, § 702, and such design may be formed instantly before committing the act by which it is carried into execution. 21 O.S.1981, § 703.

In the present case, appellant wilfully accompanied T.C., who was armed with a board, into the victim's home. When Mr. Curlee awoke and became startled by the assailants' presence, T.C. hit him with the board. Testimony indicated that appellant held the victim at least part of the time that T.C. was repeatedly beating him. Appellant also confessed that she once kicked Mr. Curlee. We find that these facts, combined with the evidence of Mr. Curlee's extensive injuries, were sufficient for the jury to conclude that Curlee was deliberately killed. Accordingly, appellant's second and third assignments of error are dismissed.

As her fourth assignment, appellant contends that the trial court erred in failing to instruct the jury on the lesser included offense of second degree murder. In support of this contention, appellant argues that the evidence proved only that she intended to aid in a robbery. She further argues that there was no evidence to prove that either she or T.C. expected a killing to occur.

It is well settled that it is the duty of the trial court to determine as a matter of law whether the evidence is sufficient to justify the submission of instructions on a lesser included offense. *Rumbo v. State,* 750 P.2d 1132 (Okl.Cr.1988). "Where there is no evidence to support a lower degree of

---

1. Appellant does not argue that the evidence was insufficient to prove felony-murder.

the crime charged, the court should not ask the jury to consider the issue." *Id.* 750 P.2d at 1133. *See also Hill v. State,* 672 P.2d 308, 312 (Okl.Cr.1983). In the present case, the evidence may well have supported appellant's claim that she entered the victim's house solely to commit a robbery and that neither she nor her accomplice foresaw the killing of Mr. Curlee. However, as the State correctly submits, appellant's allegation fails to recognize that premeditation may be formed in an instant. 21 O.S. 1981, § 703; *Hiler v. State,* 796 P.2d 346, 349 (Okl.Cr.1990). We have previously determined that the evidence was sufficient to support a conviction for first degree malice-aforethought murder. We now conclude that no rational trier of fact could have found that the death was the result of anything but a premeditated design to effect death. Accordingly, we hold that the trial court did not abuse its discretion in refusing to instruct on second degree murder.

Appellant's fifth assignment concerns the trial court's admission of photographs of the victim's body which appellant characterizes as gruesome and without probative value. While we agree with appellant that the three (3) photographs at issue may be classified as gruesome, we do not concur that the pictures were without probative value.

■ The test for admissibility of a photograph is not whether it is gruesome or inflammatory, but whether its probative value is substantially outweighed by the danger of unfair prejudice. *Nguyen v. State,* 769 P.2d 167, 171 (Okl.Cr.1988), *cert. denied* — U.S. ——, 109 S.Ct. 3264, 106 L.Ed.2d 609 (1989). In the present case, the photographs were offered to show the location and extent of the victim's wounds and to corroborate expert witness testimony. After a thorough examination of the photographs, we find that they were in fact probative of the aforementioned issues and that such probative value was not substantially outweighed by the danger of unfair prejudice. Therefore, we find that the trial court did not abuse its discretion in admit-

ting the same. *See Stout v. State,* 693 P.2d 617, 625 (Okl.Cr.1984).

In her sixth assignment of error, appellant claims that numerous instances of prosecutorial misconduct, in the form of questions, deprived her of a fair trial. We note, however, that appellant failed to object to any of the questions now complained of. Therefore, all but fundamental error has been waived. *Hiler,* 796 P.2d at 350; *Johnson v. State,* 751 P.2d 196, 197 (Okl. Cr.1988). After a thorough review of these questions, we find no fundamental error.

■ Appellant next maintains that error occurred when the prosecutor introduced her post-arrest statements at trial. The record reveals that appellant was under arrest at the time of the questioning during which the statements were elicited. However, she had not yet been charged with the murder of Mr. Curlee nor was she accompanied by her parents at that time. On the basis of the latter facts, appellant argues that her statements were taken in violation of 10 O.S.Supp.1985, § 1109. We disagree. In *Harris v. State,* 777 P.2d 1359, 1363 (Okl.Cr.1989), this Court held that police officers are not required to comply with section 1109 where a juvenile has been *arrested* and questioned on a charge enumerated in the reverse certification statute, 10 O.S.Supp.1985, § 1104.2(A). Because murder is one of the offenses enumerated in section 1104.2(A), we find no error in the admission of appellant's statements.

■ In her final assignment of error, appellant urges this Court to reconsider its position regarding the validity of the reverse certification statute, now 10 O.S. Supp.1989, § 1104.2. Appellant specifically asserts that Section 1104.2 imposes an unconstitutional presumption that an accused is competent to stand trial as an adult, thereby impermissibly shifting to her the burden of overcoming the same. This Court rejected an identical argument in *State ex rel. Coats v. Rakestraw,* 610 P.2d 256 (Okl.Cr.1980), and has consistently done so since that decision. *See A.M.H. v. State,* 766 P.2d 351, 355 (Okl.Cr.1988); *H.W. v. State,* 759 P.2d 214, 218 (Okl.Cr.

1988); *S.A.H. v. State,* 753 P.2d 381, 383 (Okl.Cr.1988); *G.E.D. v. State,* 751 P.2d 755, 757 (Okl.Cr.1988); *Douma v. State,* 749 P.2d 1163, 1165 (Okl.Cr.1988); *Trolinger v. State,* 736 P.2d 168, 170–71 (Okl.Cr. 1987); *K.C.W. v. State,* 736 P.2d 525, 526 (Okl.Cr.1987); *S.R.S. v. State,* 728 P.2d 515, 518 (Okl.Cr.1986); *Rogers v. State,* 721 P.2d 805, 807 (Okl.Cr.1986); *Ring v. State,* 654 P.2d 1085, 1086 (Okl.Cr.1982), *cert. denied* 461 U.S. 909, 103 S.Ct. 1882, 76 L.Ed.2d 812 (1983); and *Jones v. State,* 654 P.2d 1080, 1084 (Okl.Cr.1982). We are not now persuaded to abandon our prior rulings. Accordingly, this assignment is dismissed.

Finding no error warranting modification or reversal of appellant's convictions for First Degree Murder and First Degree Robbery, the Judgments and Sentences are AFFIRMED. The Judgment and Sentence for appellant's First Degree Burglary conviction is REVERSED and REMANDED with instructions to DISMISS.

LUMPKIN, V.C.J., and BRETT and JOHNSON, JJ., concur.

LANE, J., specially concurs.

LANE, Vice Presiding Judge, specially concurring:

I agree with the majority on the theory and application in this matter. I write only to further explain why only one of the two additional charges was merged with the murder charge. As stated by the majority, *Munson v. State,* 758 P.2d 324 (Okl.Cr. 1988), *cert. denied* 488 U.S. 1019, 109 S.Ct. 820, 102 L.Ed.2d 809 (1989) is very much similar to the instant case in that the defendant was charged with armed robbery, kidnapping and murder. We held that the robbery charge was the underlying felony charge for the murder conviction and therefore merged with the murder charge. In so doing, we said:

> Because the armed robbery was the initial felony which began the chain of events ultimately leading to the victim's death, this offense merged with the felony-murder conviction. *Id.* p. 333.

We then found that the kidnapping was also an extension of the robbery and therefore did not form an underlying basis for the murder charge.

In the instant case, the burglary charge formed the underlying basis for the murder charge and like the robbery in *Munson* could not sustain an independent conviction. Like the kidnapping charge in *Munson,* the robbery charge was an extension of the burglary and did not form the underlying basis for the murder conviction. It could sustain an independent conviction.