## 2657.   MINOR *v.* CITY OF ATLANTA.

1. Although officers, whether with or without lawful warrant or other authority, have entered a person's place of business and, by a violent and forcible search of the premises and seizure of property found therein, have obtained, over the protest of the owner, possession of articles tending to show his guilt of an offense, the evidence so obtained is admissible against him in a prosecution for the offense, as against the objec-

tion that it was obtained by an unlawful search and seizure, and that, through the transaction, the defendant was compelled to furnish testimony tending to incriminate himself.

2. While the Court of Appeals is a court of final review, yet the decisions of the Supreme Court are binding upon it as precedents. Whatever may be the personal views of the judges of this court upon any question, they are to be yielded, so far as they conflict with the decisions of the Supreme Court in letter or in principle.

Certiorari; from Fulton superior court—Judge Bell.    April 15, 1910.

Submitted June 1,—Decided June 14, 1910.

*John A. Boykin,* for plaintiff in error.

*James L. Mayson, William D. Ellis Jr.,* contra.

POWELL, J.   Certain police officers of the City of Atlanta went to the defendant's "near beer" saloon and compelled him to allow them to enter an adjacent back room, in which they found hidden a quantity of intoxicating liquors; he being present and protesting. They had what they called a search warrant, but whether the instrument had any legal efficacy as a search warrant it is not necessary for us to decide.    For present purposes, we will consider the case just as if the so-called search warrant were wholly invalid. When the evidence thus obtained was offered against the defendant in the police court, in the prosecution for a violation of the municipal ordinance prohibiting the keeping on hand of intoxicating liquors for the purpose of unlawful sale, he objected to it, on the ground that it had been obtained by unlawful search and seizure, and that the result of the transaction was to compel him involuntarily to give evidence tending to incriminate himself, in violation of the constitutional guarantees against unlawful search and seizure and against any person being compelled to furnish testimony tending to incriminate himself.    The objection was overruled, and this action of the court is the basis of the exception relied on in the record before us.

If this point came before us as an original proposition, we would have but little hesitancy in pronouncing it well taken.    We do not think that the unlawful-search-and-seizure clause of the constitution protects the defendant against the use of this evidence; but it would seem, as an original proposition, that he was compelled involuntarily to produce evidence against himself.    Even if our previous reflections upon this question had not induced this view

which we personally hold, the very strong and able brief and argument of counsel for the plaintiff in error would probably convince us.    But the question is not an open one.    The case is on all fours with *Duren* v. *Thomasville, 125 Ga.* 1 (53 S. E. 814), a case resting on a long line of similar precedents.    In that case the city marshal went to Duren's store with two policemen, and "searched Mr. Duren's store, over his protest, and found a quantity of intoxicants."    In that case the point was made that the evidence was inadmissible, because to admit it would be to violate that clause of the constitution which provides that no man shall be compelled to furnish testimony upon which to convict himself.    The Supreme Court held that the testimony was admissible, and that to admit it was not a violation of this constitutional guarantee. The duty of this court, in the light of the constitutional provision making the Supreme Court decisions binding upon it as precedents, may be analogized to the duty of processioners making a survey under the Civil Code, §3243 et seq.    Under that statute the processioners are not charged primarily with the duty of making any new lines.    They are merely to trace and find, if possible, the ancient landmarks.    "If the corners are established, and the lines not marked, a straight line, as required by the plat, shall be run, but an established marked line, though crooked, shall not be overruled."    So, it is our duty to follow the precedents and the ancient landmarks of the law as declared by the Supreme Court.    If the line leading from precedent to a particular point has not been marked, we are authorized to use the compass of our own judgment, and establish what we find to be the straight line, but wherever the Supreme Court has set up "an established marked line, though crooked," we have no power to overrule it.    This is a necessary and salutary provision found in the organization of the two courts—a provision that relieves the litigants of this State from that uncertainty which comes about from having two courts of final review, with the consequent possibility of conflicting decisions, where the decisions of neither court are paramount as against the decisions of the other.

Judicial work has always been and will always be necessarily somewhat affected by the personal equation of the individual judges.    The conflict in the application of precedent is to be expected, and is found in the decisions of every court—the court

thus in a sense conflicting with itself; and, in like manner, it is to be expected that this same element of the personal equation of the judge will bring about conflict in the application of precedent to a particular case, as between this court and the Supreme Court. But the beauty of our system is this: If any conflict exists between this court and the Supreme Court, the people, and especially the lawyers and the trial judges who have to use the decisions, are put upon advance information that the decision of the Supreme Court is to be followed, and is the paramount decision binding upon this court, even in preference to its own opinion. This court will never intentionally disregard the Supreme Court decision as precedent. Therefore, the harmony desirable in the body of our decisions as a whole is the natural result of the system; for as the individual judges of the two benches die or otherwise leave the bench, and what is called the personal equation expires, the coming on of new judges, uninfluenced by the same bent of mind that tended to bring about the conflict in the construction of precedent, will restore harmony in application as well as in principle.

The path in this case has been plainly marked. There is no room for construction. The question has been settled. The Supreme Court has blazed the way. This court follows.

*Judgment affirmed.*