### 73757. SMITH v. CITY OF EAST POINT et al.
(376 SE2d 215)

McMURRAY, Presiding Judge.

 In *City of East Point v. Smith*, 258 Ga. 111 (365 SE2d 432), the Supreme Court held that the city's urinalysis testing in this case was reasonable under our State constitution. In so holding, the Supreme Court reversed our decision in *Smith v. City of East Point*, 183 Ga. App. 659 (359 SE2d 692). We had held that Smith's constitutional rights were violated by an unreasonable search and seizure of his urine and that, therefore, Smith was discharged by the city without just cause. Id at 662. In view of the Supreme Court's reversal of our decision, we must now examine the remaining enumerations of error set forth by Smith. *Held*:

 1. The Personnel Board of Appeals which affirmed Smith's termination, was composed of the mayor and four senior councilmen. Via motion to dismiss filed with the board, Smith challenged the composition of that body. In this regard, he pointed out that the city charter called for five members of the board—an attorney and four qualified electors of the city. Ga. L. 1972, pp. 2151, 2209. Smith's jurisdictional challenge was rejected by the board and the superior court.

 In our previous consideration of this case, we implicitly rejected Smith's jurisdictional challenge and reached the merits of the urinalysis issue. Since we reversed the superior court on the ground that the urinalysis testing was unconstitutional, we saw no need to address the jurisdictional challenge explicitly.[1] In view of the Supreme Court's reversal of our decision, we now address Smith's jurisdictional challenge explicitly.

 At the outset, we note that on certiorari, the Supreme Court did not consider the jurisdictional challenge raised by Smith even though

---

 [1] Judge Beasley concurred specially when this case was considered previously. She reasoned that Smith's jurisdictional challenge was meritorious and that, therefore, the urinalysis issue could not be reached. *Smith v. City of East Point*, 183 Ga. App. 659, 663, supra.

it ruled against Smith on the urinalysis issue. Thus, it would appear that the Supreme Court, too, rejected Smith's jurisdictional challenge without discussion.

In 1972 the City of East Point's charter was amended by the General Assembly. The amended charter provided for the appointment of a Personnel Board of Appeals to hear and decide cases of employees who were discharged or otherwise disciplined. The board was to consist of five members. At least one member of the board was to be an attorney. The remaining members of the board were to be qualified electors of the city. Ga. L. 1972, pp. 2151, 2209.

Five years later, via ordinance, the membership of the board was changed. See OCGA § 36-35-3. Pursuant to the ordinance, the Personnel Board of Appeals was to consist of the mayor and four senior councilmen. The ordinance was adopted on November 21, 1977. It was not to take effect, however, until the "adoption of a home rule charter amendment correcting and clarifying certain portions of the City Charter . . ."

In 1979 a home rule charter amendment was adopted. Ga. L. 1979, p. 4803. It made various changes in the charter. It did not, however, speak to the composition of the Personnel Board of Appeals.

Smith takes the position that the 1972 charter amendment was never rescinded by the city council or the General Assembly. In this regard, he argues that the 1977 ordinance never took effect because an anticipated home rule charter amendment mirroring the ordinance was never enacted. We disagree.

The 1977 ordinance provided that it was not to become effective until the adoption of the home rule charter amendment. It did not require the adoption of any specific amendment with regard to the makeup of the Personnel Board of Appeals. It was simply to go into effect when a home rule charter amendment was adopted. That was done in 1979. It follows that the board which affirmed Smith's termination was composed properly of the mayor and four senior councilmen pursuant to the 1977 ordinance and that the board was not without jurisdiction to entertain Smith's appeal.

2. The initial notice of termination informed Smith that he was being discharged for conduct unbecoming his position. Smith requested more facts. Accordingly, Smith's attorney was furnished with an amended notice informing him that "he did use a controlled substance identified as THC (marijuana)." And he was furnished "copies of all scientific reports . . . in the possession, custody, or control of the City of East Point." Thereafter, Smith's appeal was heard by the Personnel Board of Appeals.

Smith moved to dismiss the proceeding on the ground that the original notice of termination was insufficient. The motion was overruled by the board and the superior court affirmed.

Smith asserts the superior court erred in affirming the decision of the board because the initial notice of termination did not set forth the reason for Smith's discharge with specificity. This assertion is without merit.

It is well-settled that an employee is entitled to be furnished with specific reasons for his discharge. See *Scott v. Undercofler*, 108 Ga. App. 460 (133 SE2d 444). The notice should be sufficient enough to enable the employee to prepare any defense the employee may have to the charge. See *Schaffer v. State Bd. of Veterinary Medicine*, 143 Ga. App. 68, 69 (237 SE2d 510). If, however, the initial notice is insufficient, it can be amended to set forth the grounds of discharge specifically. *Schaefer v. Clark*, 112 Ga. App. 806 (146 SE2d 318).

" 'The key to pleading in the administrative process is adequate opportunity to prepare. When an original notice or pleading is inadequate, it is normally supplemented by informal communication, by formal amendment, by a bill of particulars, by prehearing conferences, or by ample continuances at the hearing. And the question on review is not the adequacy of the original notice or pleading but is the fairness of the whole procedure.' Davis on Administrative Law (1951) § 80, pp. 279-290." *Schaefer v. Clark*, 112 Ga. App. 806, 808, supra.

Although the original notice of discharge furnished to Smith was insufficient, the notice was amended by facts enabling Smith to prepare a defense and to meet the issues involved in the case. Accordingly, we find no error with regard to the insufficiency of the original notice.

3. Smith contends the results of the urinalysis were inadmissible because the chain of custody was not proven sufficiently. We disagree.

It was demonstrated with reasonable certainty that the urine sample taken from Smith was the sample which was tested and that there was no tampering or substitution. *Mutcherson v. State*, 179 Ga. App. 114 (345 SE2d 661). It follows that the results of the urinalysis were admitted properly. Any doubt about the identity or purity of the sample went to its weight, not its admissibility. *Mutcherson v. State*, supra; *Fowler v. State*, 179 Ga. App. 492, 494 (4) (347 SE2d 322).

The contention is also made that the urinalysis results were inadmissible because the person who conducted the tests did not testify. This contention also fails. The test results were duly admitted as business records. An expert witness, the director of the laboratory at which the tests were conducted, testified that the results were indicative of marijuana use. It was not necessary to offer the testimony of the person who conducted the tests in order to lay a foundation for admitting the results. *Wilson v. Childers*, 174 Ga. App. 179, 181 (4) (329 SE2d 503); *McCall v. Parker*, 177 Ga. App. 774 (341 SE2d 303); *Tillman & Deal Farm Supply v. Deal*, 146 Ga. App. 232, 234 (246 SE2d 138). See *Venenga v. State*, 163 Ga. App. 161 (293 SE2d 553).

Equally without merit is the contention that the test results were inadmissible because two of the three tests which were conducted proved negative for marijuana. The negative test results bore upon the weight, not the admissibility, or the positive test result evidence.

4. The charter of the City of East Point provides, in part: "All officers and employees of said city shall be subject to discharge or removal from their connection with the city for drunkenness, dishonesty, failure to perform their duties, immoral or indecent conduct, or oppressive or abusive use of official position or power, or other conduct unbecoming their station, office or position." Ga. L. 1972, pp. 2151, 2187, 2188. Given this provision, it cannot be said that Smith's discharge constituted excessive punishment.

5. Smith's constitutional privilege against self-incrimination was not violated by the taking of the urine sample. *Raines v. White*, 248 Ga. 406 (284 SE2d 7); *Welch v. State*, 254 Ga. 603, 606 (3) (331 SE2d 573).

6. It is argued that the taking of the urine sample violated Art. I, Sec. I, Par. X of the Const. of the State of Ga. In this regard, the contention is made that the taking of the urine sample constituted an ex post facto law, retroactive law, or a law impairing the obligation of contract.

We find no violation of the cited constitutional provision. Simply put, the taking of the urine sample was not a legislative enactment.

*Judgment affirmed. Birdsong, C. J., Banke, P. J., Sognier and Pope, JJ., concur. Deen, P. J., concurs and also concurs specially. Carley, Benham and Beasley, JJ., dissent.*

DEEN, Presiding Judge, concurring specially.

Were this court now deciding this case for the first time with a clean slate, I would concur with the opinions and outcomes advocated by Presiding Judge McMurray in *Smith v. City of East Point*, 183 Ga. App. 659 (359 SE2d 692) (1987); Justice Smith in *City of East Point v. Smith*, 258 Ga. 111, 114 (365 SE2d 432) (1988); and Judge Ward in *Murphy v. McClendon*, (Civil Action No. 1:86 cv-364-HTW, decided April 8, 1988). (Justice Smith's comparison of automobile drivers with armed policemen could be extended to suggest that such testing of all taxpayers, students and teachers in public and private schools, as well as all judges and lawyers, who hold no less sensitive positions or places of importance than jockeys in the horse racing industry, could be required under the rationale of the Supreme Court's majority opinion and would lead to massive and excessive governmental intrusion of the privacy of all citizens.) However, the Supreme Court has ruled on the validity of the testing in this case, and this court, of course, is bound to follow it. "If the line leading from precedent to a particular point has not been marked, we are authorized to

use the compass of our own judgment, and establish what we find to be the straight line, but wherever the Supreme Court has set up 'an established marked line, though crooked,' we have no power to overrule it." *Minor v. City of Atlanta*, 7 Ga. App. 817, 819 (68 SE 314) (1910).

While agreeing with Judge Beasley's dissenting opinion to the extent of acknowledging that *Smith*, decided by our court, was a one-judge case and that a judgment-only vote leaves the reason "not known," and further agreeing generally with the analysis on the State Constitution (see: Beasley, "The Ga. Bill of Rights: Dead or Alive?" 34 Emory L. J. (1985)), I have reservations about how the dissent first states that the personnel board's action in this case was void, yet, in a seemingly inconsistent advisory opinion proceeds to concur with Divisions 2 through 6 of the majority opinion which followed from the initial ruling that the board had jurisdiction to consider the matter. I concur fully with the majority opinion.

CARLEY, Judge, dissenting.

I join Division 1 of the dissent to the extent that it incorporates by reference the special concurring opinion in *Smith v. City of East Point*, 183 Ga. App. 659, 663 (359 SE2d 692) (1987) concerning the construction and viability of the 1977 Ordinance vis-a-vis the 1979 Legislative Charter Amendment. I do not concur with the remainder of Division 1 of the dissent. However, I do concur and join Division 2 of the dissent.

I am authorized to state that Judge Benham joins in this dissent.

BEASLEY, Judge, dissenting.

1. I respectfully dissent with respect to Division 1, for the reasons set out in the special concurrence when the case was initially before us. *Smith v. City of East Point*, 183 Ga. App. 659, 663 (359 SE2d 692) (1987).

This may seem anomalous, in view of the Supreme Court's ruling on the issue of the constitutionality of the mandatory urinalysis in connection with employment retention. However, the Court apparently merely assumed, for the purpose of addressing the substance of the opinion writer's view, that the personnel board was properly constituted. In any event, its decision on the constitutional issue does not foreclose the question of the composition of the administrative body which affirmed the termination of employment based on the urinalysis. But it does mean that, if the body had no jurisdiction in the first place, its affirmance of termination was void for a different reason than originally addressed.

Two points should be noted. The initial opinion rendered in this court was that of one judge and not that of the court. One member of

the panel concurred in the judgment only, so the reason for that judge's vote for reversal is not known. The third member concurred on an entirely different basis, as set out in the special concurrence. This must be understood when considering what the Supreme Court described as "the Court of Appeals' holding" and its statements concerning the Court of Appeals' views. The opinion rendered has physical precedence only, Rule 35 (b), and because of its particular nature does not express the views of even a majority of the panel.

The second point relates to the Supreme Court's statement in footnote 3 that, "as noted by the Court of Appeals, Smith's failure to pursue a fourth amendment claim is insignificant as a practical matter." The omission is not insignificant at all. Quite to the contrary, the result is that Smith cannot carry his case to the United States Supreme Court and seek a national-standard ruling that his federal constitutional right was violated even if the state constitution was adhered to. Cf. *Michigan v. Long*, 463 U. S. 1032, 1037 (103 SC 3469, 77 LE2d 1201) (1983); *New York v. Class*, 475 U. S. 106, 109 (106 SC 960, 89 LE2d 81) (1986). See concurring opinion of Justice Stephens in *Massachusetts v. Upton*, 466 U. S. 727, 735 (104 SC 2085, 80 LE2d 721) (1984).

Pursuit of rights claimed separately under both constitutions is the only way in which to assure vindication of "constitutional rights" in our federal system. Of course, if relief is granted pursuant to the state constitution, the complaining party need go no farther than our own Supreme Court, so for that reason the state constitutional claim should always be addressed and decided first. Otherwise, as demonstrated by the history of an Oregon case, the United States Supreme Court unnecessarily must decide the federal issue: *State v. Kennedy*, 49 Or. App. 415 (619 P2d 948) (1980), rev'd and remanded sub nom. *Oregon v. Kennedy*, 456 U. S. 667 (102 SC 2083, 72 LE2d 416) (1982), aff'd sub nom. *State v. Kennedy*, 61 Or. App. 469 (657 P2d 717), aff'd 295 Or. 260 (666 P2d 1316) (1983). Justice Linde explains this in the final opinion in the wayward travels of this case.

2. To the extent that the remaining enumerations involve questions of law which would arise again in a hearing under a properly constituted board, I concur in Divisions 2-6.

DECIDED NOVEMBER 18, 1988 —
REHEARING DENIED DECEMBER 5, 1988 — 

*Scott Walters, Jr.*, for appellant.
*James A. Eidson, James W. Kytle*, for appellees.