A02A2314. RAMEY v. THE STATE.
(572 SE2d 662)

JOHNSON, Presiding Judge.

Mark Todd Ramey was convicted of driving under the influence of drugs, speeding, and improper lane change. He appeals his conviction of driving under the influence of drugs, contending the trial court erred in denying his amended motion to suppress and in sentencing him for driving under the influence of drugs. We find no merit in Ramey's allegations, and we therefore affirm his conviction of driving under the influence of drugs.

The record in the present case shows that an officer observed Ramey's vehicle speeding and swerving into another lane to avoid striking a slower moving vehicle. The officer stopped Ramey's vehicle and noticed that Ramey was nervous, his eyes were red, glassy, and dilated, his speech was slurred, and his arms and hands continuously twitched. Ramey consented to take some field sobriety tests. Based on his personal observations of Ramey's driving and the results of the field sobriety tests, the officer placed Ramey under arrest for driving under the influence of drugs. The officer read Ramey the Georgia implied consent warning and requested a urine sample, which Ramey agreed to provide.

Ramey was transported to the county jail and asked if he understood the implied consent rights. Ramey stated he understood his rights and gave a urine sample. The sample was marked with Ramey's name and the date and then sealed. Later that night, the officer transported the urine sample to the sheriff's department in Warner Robins. He placed the urine sample in the locked evidence refrigerator until the sample could be transferred to the Central Regional Crime Lab in Macon. The officer filled out the evidence log concerning the urine sample.

The sample was later transported to the Central Regional Crime Lab and tested by a forensic toxicologist. The sample tested positive for cocaine and benzoylecgonine, a metabolite of cocaine. Pursuant to an order of the trial court, two samples of urine were taken from the state's sample for independent testing. A sample of five milliliters was sent to a company in Pennsylvania for toxicology testing. The

results obtained were the same as those obtained by the Central Regional Crime Lab. A sample of 20 milliliters was sent to a company in Maryland for DNA testing. However, since the sample had not been frozen, the Maryland company could not perform the DNA testing.

Ramey argues on appeal that the trial court should have granted his motion to suppress the results of the urine test. Specifically, he contends that the state needs to divide the urine sample before it is tested, providing a control sample and a tested sample. According to Ramey, this procedure would allow defendants the opportunity to show that the tested urine sample is not theirs. We find no merit in this argument.

Ramey does not argue that the state failed to prove the urine sample tested in this case was his urine sample. And, Ramey offers no evidence that anyone tampered with the urine sample. In fact, the testimony in the record shows that the officers followed proper police procedures in obtaining, labeling, transporting, and testing the urine sample.

Instead, Ramey argues that the present procedure used to collect urine denied him the opportunity to challenge that the urine sample was, in fact, his urine sample. We disagree. A defendant can always argue that the state failed to produce sufficient chain of custody evidence or that the state provided opportunities for tampering with the evidence.[1] As stated previously, Ramey does not make this argument in the present case because the record clearly establishes that the state provided sufficient chain of custody evidence.

Ramey fails to cite any authority authorizing a new procedure for collecting urine samples. We agree with the trial court:

> Whether the Defendant should be allowed to watch every step of the collection process; whether the Defendant should be allowed to sign identifying labels at the point of collection; whether the Defendant should be given a separate sample at the point of collection; and, whether all urine samples must be frozen for DNA analysis are issues that must be addressed by the Legislature or the State Crime Lab as to their practicality, possibility, and affordability.

It is not this Court's role to implement new procedures for the collection and testing of urine samples.

Because the state has shown that Ramey's urine sample was collected and tested according to procedures established by the Central

---

[1] See generally *Swanson v. State*, 248 Ga. App. 551, 552 (1) (b) (545 SE2d 713) (2001); *Kerr v. State*, 205 Ga. App. 624, 625 (1) (423 SE2d 276) (1992).

Regional Crime Lab, and because Ramey has failed to show that the urine sample analyzed by the state was not his urine sample, the trial court did not err in denying Ramey's motion to suppress.[2]
*Judgment affirmed. Blackburn, C. J., and Miller, J., concur.*

DECIDED SEPTEMBER 27, 2002.

*Paul S. Weiner*, for appellant.
*A. Robert Tawse, Jr., Solicitor-General, Arthur J. Creque, Assistant Solicitor-General*, for appellee.

---

[2] See *Swanson*, supra; *Smith v. City of East Point*, 189 Ga. App. 454, 456 (3) (376 SE2d 215) (1988).